UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PRINCIPLE HOMECARE, LLC, MARTON CARE INC., PROMPT HOME CARE LLC, and CARE CONNECT CDPAP, INC.,

               Plaintiffs,

     v.

JAMES V. MCDONALD, in his official capacity as Commissioner of the New York State Department of Health,

               Defendant.

No. 24-cv-07071-MMG

---

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant*
28 Liberty Street
New York, New York 10005
(212) 416-6236

ERIN R. MCALISTER
JESSICA PREIS
Assistant Attorneys General
   *of Counsel*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATUTORY AND REGULATORY FRAMEWORK ....................................................... 3

    A. The Medicaid Program ....................................................................................... 3

    B. The Consumer Directed Personal Assistance Program ....................................... 4

    C. The CDPAP Amendment and Selection of a Statewide FI ................................ 5

ALLEGATIONS OF THE COMPLAINT ............................................................................ 6

STANDARD OF REVIEW ................................................................................................. 8

ARGUMENT ....................................................................................................................... 9

I.   THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE A CONTRACTS CLAUSE
    VIOLATION ................................................................................................................. 9

    A. The CDPAP Amendment Does Not Substantially Impair Plaintiffs' Contracts ............... 11

       1. The Amendment Does Not Interfere with Plaintiffs' Contractual Bargains ............... 11

       2. The CDPAP Amendment Does Not Interfere with Plaintiffs' Reasonable
          Expectations ................................................................................................ 12

    B. The CDPAP Amendment Has a Legitimate Public Purpose ............................ 17

    C. The CDPAP Amendment Was Designed in an "Appropriate and Reasonable"
       Manner ........................................................................................................ 19

II.  THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE A TAKINGS CLAUSE
    VIOLATION ............................................................................................................... 21

    A. Plaintiffs Fail to Allege a Protected Property Interest ..................................... 21

    B. Regardless, Plaintiffs Fail to Allege a Takings Claim ...................................... 24

III. THE CDPAP AMENDMENT DOES NOT DENY PLAINTIFFS EQUAL
    PROTECTION .............................................................................................................. 28

IV. PLAINTIFFS FAIL TO STATE A SUBSTANTIVE DUE PROCESS CLAIM ................... 31

CONCLUSION ................................................................................................................... 34

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1256 Hertel Ave. Assocs., LLC v. Calloway*,
    761 F.3d 252 (2d Cir. 2014)............................................................................26

*335-7 LLC v. City of N.Y.*,
    No. 20-CV-1053 (ER), 2021 WL 860153 (S.D.N.Y. Mar. 8, 2021) ................................10, 16

*A.F.C. Enterprises v. N.Y.C. Sch. Const. Auth.*,
    No. CV-98-4534 (CPS), 1999 WL 1417210 (E.D.N.Y. June 29, 1999) ...............................24

*All. of Auto. Mfrs., Inc. v. Currey*,
    610 F. App'x 10 (2d Cir. Apr. 7, 2015) .......................................................... 13-14

*All. of Auto. Mfrs., Inc. v. Currey*,
    984 F. Supp. 2d 32 (D. Conn. 2013).........................................................................14

*Allied Structural Steel Co. v. Spannaus*,
    438 U.S. 234 (1978)...................................................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................8

*Barzilay v. City of N.Y.*,
    610 F. Supp. 3d 544 (S.D.N.Y. 2022)....................................................................22

*Bd. of Regents of State Colls. v. Roth*,
    408 U.S. 564 (1972).................................................................................................22

*Beatie v. City of N.Y.*,
    123 F.3d 707 (2d Cir. 1997).................................................................................33

*Bimber's Delwood, Inc. v. James*,
    496 F. Supp. 3d 760 (W.D.N.Y. 2020) ...............................................................26

*Bldg. & Realty Inst. of Westchester & Putnam Counties, Inc. v. State of N.Y.*,
    No. 19-CV-11285 (KMK), 2021 WL 4198332 (S.D.N.Y. Sept. 14, 2021),
    *aff'd*, No. 21-2448, 2024 WL 1061142 (2d Cir. Mar. 12, 2024) ...................................13, 17

*Bryant v. N.Y.S. Educ. Dep't*,
    692 F.3d 202 (2d Cir. 2012).................................................................................33

*Bucklew v. Precythe*,
     587 U.S. 119 (2019)...............................................................................................................10

*Buffalo Teachers Fed'n v. Tobe*,
     464 F.3d 362 (2d Cir. 2006)..............................................................................17, 19, 21

*Collins v. City of Marker Heights*,
     503 U.S. 115 (1992)...............................................................................................................31

*Concerned Home Care Providers, Inc. v. Cuomo*,
     783 F.3d 77 (2d Cir. 2015)..................................................................................... 21-23

*Corning Council v. McDonald*,
     No. 908147-24 (Sup. Ct. Albany Cnty. Sept. 30, 2024)................................................3, 18, 29

*Dandridge v. Williams*,
     397 U.S. 471 (1970)...............................................................................................................29

*Daniel v. N.Y.S. Dep't of Health*,
     No. CV 21-4097 (DG)(AYS), 2022 WL 21781460 (E.D.N.Y. Aug. 27, 2022),
     *aff'd sub nom.*, *Daniel v. Doe 1 Through Doe 10*, 2024 WL 2131446
     (2d Cir. May 13, 2024) ....................................................................... 15, 22-23, 27

*Elmsford Apartment Assocs., LLC v. Cuomo*,
     469 F. Supp. 3d 148 (S.D.N.Y. 2020).......................................13, 17, 19, 21, 25, 27

*Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*,
     459 U.S. 400 (1983)...............................................................................................................10, 17

*Eng v. Cash*,
     No. CV 10-3117 (SJF)(WDW), 2012 WL 1031421 (E.D.N.Y. Mar. 8, 2012) .....................23

*Everest Foods Inc. v. Cuomo*,
     585 F. Supp. 3d 425 (S.D.N.Y. 2022)........................................................................ 11, 13-14

*FCC v. Beach Commc'ns, Inc.*,
     508 U.S. 307 (1993)...............................................................................................................29

*Ganci v. N.Y.C. Transit Auth.*,
     420 F. Supp. 2d 190 (S.D.N.Y.), *aff'd*, 163 F. App'x 7 (2d Cir. 2005)......................... 21, 23-25

*Garelick v. Sullivan*,
     987 F.2d 913 (2d Cir. 1993)...............................................................................................27

*Gizzo v. Ben-Habib*,
   44 F. Supp. 3d 374 (S.D.N.Y. 2014)......................................................................24

*Gray Gables Corp. v. Arthur*,
   No. 21-1551-cv, 2022 WL 905393 (2d Cir. Mar. 29, 2022)......................................30

*Great Atl. & Pac. Tea Co. v. Town of E. Hampton*,
   997 F. Supp. 340 (E.D.N.Y. 1998) ...........................................................................33

*Greater Chautauqua Fed. Credit Union v. Marks*,
   600 F. Supp. 3d 405 (S.D.N.Y. 2022), *modified sub nom. Greater Chautauqua Fed.*
   *Credit Union v. Quattrone*, No. 1:22-CV-2753 (MKV), 2023 WL 6037949 (S.D.N.Y.
   Sept. 15, 2023) ...........................................................................................................26

*Grossman v. Axelrod*,
   646 F.2d 768 (2d Cir. 1981)......................................................................................22

*Haller v. U.S. Dep't of Health & Hum. Servs.*,
   No. 22-3054, 2024 WL 290440 (2d Cir. Jan. 23, 2024) ...........................................27

*Horne v. Dep't of Agric.*,
   576 U.S. 350 (2015) ...................................................................................................26

*In re NYAHSA Litig.*,
   318 F. Supp. 2d 30 (N.D.N.Y. 2004), *aff'd sub nom. N.Y. Ass'n of Homes & Servs.*
   *for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006) ..........................32-33

*Int'l Bhd. of Elec. Workers, Loc. 97 v. Niagara Mohawk Power Corp.*,
   143 F.3d 704 (2d Cir. 1998)......................................................................................14

*Johnson v. Rowley*,
   569 F.3d 40 (2d Cir. 2009)........................................................................................22

*Kadrmas v. Dickinson Pub. Sch.*,
   487 U.S. 450 (1988) ...................................................................................................29

*Kaye v. Whalen*,
   44 N.Y.2d 754 (1978) ................................................................................................23

*Kelly Kare, Ltd. v. O'Rourke*,
   930 F.2d 170 (2d Cir. 1991)...............................................................................14-15, 22

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
   480 U.S. 470 (1987)...............................................................................................20, 25

*Killoran v. Westhampton Beach Sch. Dist.*,
   No. 22-1753, 2023 WL 4503274 (2d Cir. July 13, 2023)......................................................30

*Knick v. Twp. of Scott, Penn.*,
   588 U.S. 180 (2019)................................................................................................................21

*Lingle v. Chevron U.S.A. Inc.*,
   544 U.S. 528 (2005)................................................................................................................25

*Lowrance v. Achtyl*,
   20 F.3d 529 (2d Cir. 1994)......................................................................................................31

*Lucas v. S.C. Coastal Council*,
   505 U.S. 1003 (1992)..............................................................................................................25

*Martz v. Inc. Vill. of Valley Stream*,
   22 F.3d 26 (2d Cir. 1994) .......................................................................................................23

*Martz v. Inc. Vill. of Valley Stream*,
   No. CV 92-4448 (ADS), 1993 WL 646408 (E.D.N.Y. July 9, 1993), *aff'd*, 22 F.3d 26
   (2d Cir. 1994)..........................................................................................................................15

*McCarthy v. Cuomo*,
   No. 20-cv-2124 (ARR), 2020 WL 3286530 (E.D.N.Y. June 18, 2020) ...........................26-27

*Md. Shall Issue v. Hogan*,
   963 F.3d 356 (4th Cir. 2020) ..................................................................................................26

*Melendez v. City of N.Y.*,
   16 F.4th 992 (2d Cir. 2021) ............................................................................9-11, 18, 19-21

*Mental Hygiene Legal Serv. v. Cuomo*,
   13 F. Supp. 3d 289 (S.D.N.Y. 2014), *aff'd*, 609 F. App'x 693 (2d Cir. 2015).......................33

*Molinari v. Bloomberg*,
   564 F.3d 587 (2d Cir. 2009)....................................................................................................31

*New Orleans v. Dukes*,
   427 U.S. 297 (1976) (per curiam)...........................................................................................29

*Nordlinger v. Hahn*,
   505 U.S. 1 (1992)....................................................................................................................29

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998)........................................................................................................9

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*,
    763 F.3d 198 (2d Cir. 2014)............................................................................9

*Penn Central Transport, Co. v. City of N.Y.*,
    438 U.S. 104 (1978)..............................................................................25-28

*Perry v. Sindermann*,
    408 U.S. 593 (1972)................................................................................24

*Phillips v. Wash. Legal Found.*,
    524 U.S. 156 (1998)................................................................................22

*Plaza Health Laboratories, Inc. v. Perales*,
    878 F.2d 577 (2d Cir. 1989).......................................................................22

*Powers v. Ohio*,
    499 U.S. 400 (1991)................................................................................33

*Progressive Credit Union v. City of N.Y.*,
    889 F.3d 40 (2d Cir. 2018)....................................................................28, 31

*Radwan v. Manuel*,
    55 F.4th 101 (2d Cir. 2022) .......................................................................24

*Regents of Univ. of Mich. v. Ewing*,
    474 U.S. 214 (1985) (Powell, J., concurring) ......................................................32

*Rehman v. SUNY at Stony Brook*,
    596 F. Supp. 2d 643 (E.D.N.Y. 2009) ............................................................24

*Rosenfeld v. Port Auth. of N.Y. & N.J.*,
    108 F. Supp. 2d 156 (E.D.N.Y. 2000) ............................................................22

*Ruston v. Town Bd. for Skaneateles*,
    610 F.3d 55 (2d Cir. 2010).......................................................................30

*Rye Psych. Hosp. Ctr. v. New York*,
    177 A.D.2d 834 (3d Dep't 1991)..................................................................23

*S & D Maint. Co. v. Goldin*,
    844 F.2d 962 (2d Cir. 1988).......................................................................23

*Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*,
    116 F.3d 41 (2d Cir. 1997).......................................................................14

*Sanitation & Recycling Indus., Inc. v. City of N.Y.*,
    107 F.3d 985 (2d Cir. 1997)............................................................... 9-10, 13, 20, 24

*Savage v. Mills*,
    No. 1:20-cv-00165 (LEW), 2020 WL 4572314 (D. Maine. Aug. 7, 2020)...........................32

*Senape v. Constantino*,
    936 F.2d 687 (2d Cir. 1991)................................................................................23

*Sensational Smiles, LLC v. Mullen*,
    793 F.3d 281 (2d Cir. 2015)...........................................................................31, 33

*SH3 Health Consulting, LLC v. Page*,
    459 F. Supp. 3d 1212 (E.D. Mo. 2020)..................................................................31

*Smith v. Half Hollow Hills Cent. Sch. Dist.*,
    298 F.3d 168 (2d Cir. 2002)...........................................................................31, 33

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*,
    560 U.S. 702 (2010)........................................................................................32

*Sveen v. Melin*,
    584 U.S. 811 (2018)............................................................................. 9-10, 16

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
    535 U.S. 302 (2002)........................................................................................25

*Tekkno Lab'ys, Inc. v. Perales*,
    933 F.2d 1093 (2d Cir. 1991)..............................................................................22

*U.S. Trust Co. of N.Y. v. New Jersey*,
    431 U.S. 1 (1977)..........................................................................................9

*United States v. Sperry Corp.*,
    493 U.S. 52 (1989)........................................................................................25

*Veix v. Sixth Ward Bldg. & Loan Ass'n of Newark*,
    310 U.S. 32 (1940)........................................................................................13

*Venture I LLC v. Newsom*,
    No. EDCV 20-1138 (JGB)(KKX), 2020 WL 4344631 (C.D. Cal. June 23, 2020)................32

*Village of Willowbrook v. Olech*,
    528 U.S. 562 (2000)........................................................................................28

*Wang v. Pataki*,
   396 F. Supp. 2d 446 (S.D.N.Y. 2005) ..................................................................9

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................................33

*Wigginess Inc. v. Fruchtman*,
   482 F. Supp. 681 (S.D.N.Y. 1979), *aff'd*, 628 F.2d 1346 (2d Cir. 1980) ........................ 32-33

## Constitutions

Fifth Amendment ..................................................................................................21, 24

Fourteenth Amendment ..............................................................................................28

Contracts Clause .......................................................................................... *passim*

Equal Protection Clause ...................................................................................... 2, 8, 28-29

Substantive Due Process Clause ...............................................................................3, 8, 32

Takings Clause..............................................................................................2, 8, 21, 24-25

## Federal Statutes

42 U.S.C.
   § 1396...............................................................................................3, 19, 28
   § 1396a.............................................................................................3, 19, 28
   § 1396b..................................................................................................3

## State Statutes

Part HH of Chapter 57 of the New York Session Laws of 2024 (the "CDPAP
   Amendment").......................................................................................... *passim*

Social Services Law
   Art. 5, Title 11.............................................................................................3
   § 363.................................................................................................3, 19, 28
   § 363-a..................................................................................................4, 15
   § 365-f ("CDPAP Law").................................................................................. *passim*

**State Regulations**

18 NYCRR
  § 505.28................................................................................................................4-5

**Rules**

Fed. R. Civ. P. 12(b)(6)......................................................................................................1

**Legislative History**

2017 Sess. Law News of N.Y. Ch. 57 (S. 2007B)...........................................................15
2019 Sess. Law News of N.Y. Ch. 57 (S. 1507-C)..........................................................15
2021 Sess. Law News of N.Y. Ch. 57 (S. 2507-C)..........................................................16
2022 Sess. Law News of N.Y. Ch. 57 (A. 9007-C)..........................................................16

**Other Authorities**

Black's Law Dictionary, 12th ed. 2024 .............................................................................11

Model Administrative Agreement for the Provision of Fiscal Intermediary Services for
  the CDPAP Program ("Model Contract"), available at
  https://www.health.ny.gov/health_care/medicaid/redesign/docs/cdpas_fi_plan_final_
  model_agreement.pdf.............................................................................................11, 12

"Governor Hochul Announces Next Steps in Plans to Strengthen Home Care Services for
  New Yorkers," available at
  https://www.governor.ny.gov/news/governor-hochul-announces-next-steps-plans-
  strengthen-home-care-services-new-yorkers ...............................................................6

Lead Fiscal Intermediary Contracting Attestation Form and Supporting Information,
  available at
  https://www.health.state.ny.us/funding/rfo/inactive/20039/docs/questions_and_answe
  rs_attestation.pdf..........................................................................................................16

New York State Fiscal Intermediaries for the CDPAP Program, Request for Offers
  #20039, available at
  https://www.health.ny.gov/funding/rfo/inactive/20039/.............................................15

New York State Fiscal Intermediary Services, N.Y.S. Dep't of Health, available at
  https://www.health.ny.gov/funding/rfp/20524; ...........................................................6

Public Partnerships LLC's State Programs, available at
  https://pplfirst.com/programs/..................................................................................6, 30

Defendant James V. McDonald ("Defendant" or "Commissioner McDonald"), sued in his official capacity as Commissioner of the New York State Department of Health ("DOH"), respectfully submits this memorandum of law in support of his motion to dismiss the Complaint ("Compl."), for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs are four fiscal intermediaries ("FIs") that provide administrative functions in connection with New York's Consumer Directed Personal Assistance Program ("CDPAP"), which is a service available through the New York State Medicaid Program ("Medicaid"). Through CDPAP, qualified Medicaid beneficiaries ("consumers") can receive home care services by hiring personal assistants ("PAs") to provide them with at-home personal care or nursing services. FIs such as Plaintiffs provide administrative services to the consumers, consisting primarily of processing PAs' wages, benefits, and tax withholdings, and maintaining related records. Plaintiffs challenge the enactment of Part HH of Chapter 57 of the New York Session Laws of 2024 (the "CDPAP Amendment"), which will transition CDPAP from utilizing hundreds of FIs to a single statewide FI contractor (the "Statewide FI") and its subcontractors by April 1, 2025. Plaintiffs claim that the CDPAP Amendment violates their rights under the United States Constitution.

Plaintiffs are mistaken. Their claims are premised on allegations that Plaintiffs had a reasonable expectation or property interest in continued participation in Medicaid, and continued renewal of contracts for FI services under Medicaid. However, case law is clear that Plaintiffs had no such legitimate expectation or property right. For this and other reasons, all of Plaintiffs' claims in this action fail, both facially and applied.

First, Plaintiffs fail to plausibly allege a violation of the Contracts Clause because the CDPAP Amendment will not undermine their contractual bargains with Medicaid Managed Care

1

Organizations ("MCOs"). The contracts at issue expressly state that they terminate automatically and immediately if Plaintiffs are barred from participating in a government health care program. *See* November 1, 2024 Declaration of Jessica Preis ("Preis Decl."), Exs. 2-5 (contracts identified in the Complaint) ¶ 11. The CDPAP Amendment invokes these termination provisions because it prohibits Plaintiffs from operating as FIs within CDPAP, a state healthcare program. Thus, the amendment does not undermine Plaintiffs' contractual bargain with the MCOs — it is, in fact, part of Plaintiffs' bargain. Moreover, Plaintiffs cannot demonstrate that the CDPAP Amendment is a "substantial impairment" to their contracts because the contracts include provisions requiring Plaintiffs to comply with all changes to state law and the Medicaid program. Nor do Plaintiffs have a reasonable expectation that their Medicaid-related contracts would renew indefinitely because they opened businesses that are entirely funded and extensively regulated by the State and DOH. Alternatively, Plaintiffs' Contracts Clause claim fails because the CDPAP Amendment was designed in an "appropriate and reasonable" manner for a legitimate public purpose: switching from over 600 FIs to one statewide FI will reduce the administrative costs of CDPAP, so that Medicaid funds can be spent on patient care, and DOH's oversight of the program will be more efficient and effective.

Second, Plaintiffs fail to allege a Takings Clause claim. The Second Circuit has consistently held for over 40 years that there is no property interest in continued participation as a Medicaid provider or in future Medicaid payments. Regardless, even if there was a property interest, the CDPAP Amendment is not a regulatory taking under any applicable standard.

Third, Plaintiffs do not allege a violation of the Equal Protection Clause because the CDPAP Amendment creates a rational classification by requiring that any bidders for the Statewide FI contract have prior experience providing FI services on a statewide basis. Plaintiffs,

who do not have experience providing statewide FI services, are not similarly situated to an FI that does have that experience.

Fourth, because Plaintiffs do not allege an infringement of a fundamental right or that they are members of a suspect class, their substantive due process claim fails because the CDPAP Amendment easily passes rational basis review. Indeed, it is wholly rational for Medicaid to switch from over 600 FIs to one Statewide FI for efficiency and to save on administrative costs.

Notably, in a recent proceeding in Supreme Court, Albany County challenging the CDPAP Amendment on constitutional grounds, the court found that petitioner-FIs had not demonstrated a likelihood of success on the merits because the amendment did not violate the Equal Protection and Substantive Due Process Clauses of the Constitution, and thus denied the preliminary injunction motion. *See* Preis Decl. Ex. 1 (*Corning Council v. McDonald*, No. 908147-24, NYSCEF No. 59 (Sup. Ct. Albany Cnty. Sept. 30, 2024)). Similarly here, Plaintiffs' claims have no merit.

Accordingly, the Complaint should be dismissed.

## STATUTORY AND REGULATORY FRAMEWORK

### A.  **The Medicaid Program**

Medicaid was designed as a joint state and federal program to provide medically necessary care, services, and supplies to needy and impoverished people. 42 USC § 1396a; N.Y. Social Servs. Law ("SSL") Art. 5, Title 11. Under the terms of Medicaid, the federal government provides part of the funding, and in New York, responsibility for the remaining funds is divided between State and local governments. *See* 42 U.S.C. §§ 1396a, 1396b. The primary purpose of Medicaid is to make medically necessary covered health and medical services available to eligible individuals. *See* SSL § 363; 42 U.S.C. § 1396. Federal law requires that the State's Medicaid payments "are consistent with efficiency, economy, and quality of care." 42 U.S.C. § 1396a(a)(30)(A).

DOH is the single state agency responsible for administration of Medicaid, and may promulgate all necessary regulations and guidelines for its administration. *See* SSL § 363-a.

**B. <u>The Consumer Directed Personal Assistance Program</u>**

CDPAP is a Medicaid program intended to permit chronically ill and/or physically disabled Medicaid beneficiaries who receive home care services to obtain greater flexibility and freedom of choice by hiring community members — including in certain circumstances family and friends — to work as their PAs. *See generally* SSL § 365-f (the "CDPAP Law"); 18 New York Codes, Rules and Regulations ("NYCRR") § 505.28. Services under CDPAP are available to all eligible Medicaid members including those who receive services through an MCO or a local department of social service ("LDSS").

Eligible individuals who elect to participate in and are determined eligible for CDPAP are referred to as consumers. 18 NYCRR § 505.28(b)(1). Consumers may receive assistance with personal care services, home health aide services, and skilled nursing tasks performed by a PA under the instruction, supervision, and direction of the consumer or the consumer's designated representative. SSL § 365-f (2)(c); 18 NYCRR § 505.28(b)(2). Each individual consumer is required to assume numerous responsibilities, including but not limited to, recruiting, hiring, training, and supervising their PAs. SSL § 365-f (3); 18 NYCRR § 505.28(h)(1)(i).

FIs perform administrative services for consumers such as wage and benefit processing for PAs, processing income tax and other required wage withholdings for PAs, and maintaining various records. *See* SSL § 365-f (4-a)(a)(i)-(ii); 18 NYCRR § 505.28(j). FIs contract with either MCOs or LSSDs in which the consumers are enrolled. *See* 18 NYCRR § 505.28(e)(1)(v), (j)(1)(vii). MCOs are responsible for developing plans of care for consumers, and consumers are responsible for managing the plan of care and training and supervising their PAs. *Id.* §

505.28(d)(3)(i) & (h)(1)(i). FI's roles are limited, and they do not perform those tasks. SSL § 365-f (4-a)(a)(iii). As set out in the SSL, FI services, "performed on behalf of the consumer to facilitate the consumer's role as the employer," include services such as "wage and benefit processing" for consumer directed PAs, "maintaining personnel records," including time records, for each consumer directed PA, and "maintaining records of service authorizations and reauthorizations." SSL § 365-f (4-a)(a)(ii)(A)-(J).

### C. __The CDPAP Amendment and Selection of a Statewide FI__

The CDPAP Amendment, deemed effective April 1, 2024, authorized the transition to a Statewide FI. The CDPAP Amendment directed that the Statewide FI would be selected by DOH through a bidding process, and required that any company submitting a bid must demonstrate that, *inter alia*, they are "providing services as a fiscal intermediary on a statewide basis with at least one other state" as of April 1, 2024. SSL § 365-f (4-a)(b)(i)(B). The purpose of this requirement is straightforward: if a company can demonstrate they have acted as an FI on a statewide basis in another state, then it shows they are capable of being the Statewide FI in New York. *See id.*

The CDPAP Amendment requires any MCOs and LSSDs offering CDPAP services to eventually contract with the Statewide FI to provide all FI services to consumers. SSL § 365-f (4-a)(a)(ii-a). In addition, the Statewide FI shall subcontract the delivery of FI services to "at least one entity per rate setting region" that (1) has "a proven record of delivering services to" seniors and individuals with disabilities; (2) has been providing FI services since January 1, 2012; and (3) is able "to provide any delegated [FI] services with cultural and linguistic competency specific to the popular of consumers and those of the available work force." SSL § 365-f (4-a)(a)(ii-b). The statute, however, does not limit the Statewide FI from subcontracting with additional FIs, including those that do not meet the statutory criteria for the four "core" subcontractors. *See id*. All currently

operating FIs that do not subcontract with the Statewide FI are required to cease operations as FIs *for CDPAP* by April 1, 2025. *See* SSL § 365-f (4-a-1)(a).

DOH issued Request for Proposals #20524 (the "RFP") to select the Statewide FI on June 17, 2024, and issued an amended RFP on August 7, 2024. Compl. ¶¶ 90-91.[1] On September 30, 2024, it was announced that to fulfill the role of Statewide FI, DOH selected Public Partnerships LLC ("PPL"), a company that operates in 21 states and contracts with 15 state Medicaid programs.[2] The Press Release states that PPL has a "diverse alliance of subcontracted partners" that will "ensure multilingual, culturally sensitive home care is easily accessible." *Id.* PPL has already identified four "core" regional home care partners and more than 30 strategic partnerships with community-based FI providers. *Id.* PPL indicated that it will also put forth a "robust, multilingual, accessible communications plan that is focused on print, digital and social media content." *Id.*

## ALLEGATIONS OF THE COMPLAINT

Plaintiffs are four companies that contract with MCOs to provide FI services to CDPAP consumers in New York. Compl. ¶¶ 13-16, 106-42.[3] Plaintiffs allege they established their businesses between 2015 and 2018, and began undertaking contractual obligations with MCOs between 2017 and 2018. *See id.* ¶¶ 106-42. The Complaint explains that MCOs are "private companies that contract with states to provide healthcare services to Medicaid beneficiaries," and that FIs contract with and are paid by the Medicaid MCOs. *Id.* ¶ 49. Plaintiffs allege that FI Medicaid reimbursement rates are based on methodology issued by DOH. *Id.* ¶ 49.

---

[1]  *See also* New York State Fiscal Intermediary Services, N.Y.S. Dep't of Health, available at https://www.health.ny.gov/funding/rfp/20524, cited in the Complaint. *See* Compl. ¶ 90.

[2]  *See* "Governor Hochul Announces Next Steps in Plans to Strengthen Home Care Services for New Yorkers," available at https://www.governor.ny.gov/news/governor-hochul-announces-next-steps-plans-strengthen-home-care-services-new-yorkers, (the "Press Release"); *see also* Public Partnerships LLC's State Programs, available at https://pplfirst.com/programs/.

[3]  Although the Complaint references the fact that certain FIs contract with LSSDs, Plaintiffs do not appear to allege that they have any contracts with LSSDs. *See* Compl. ¶¶ 105-45.

Plaintiffs allege that the contracts FIs enter with MCOs "are generally based on the same standard form template and, as relevant here, contain the same material terms." *Id.* ¶ 52. Plaintiffs allege that these contracts have one-year terms, and they generally automatically renew absent termination. *Id.* ¶ 53. The contracts also allow the parties to terminate *without cause* upon a certain notice period. *Id.* The Complaint also alleges that the contracts terminate automatically if either party is "excluded, suspended, or barred from participating in any government health care program." *Id.* ¶ 53. In addition, DOH is permitted to "'terminate a fiscal intermediary's contract . . . or suspend or limit the fiscal intermediary's rights and privileges under the contract' if a Fiscal Intermediary 'failed to comply with the provisions of [the statute] or regulations.'" *Id.* ¶ 54 (quoting the SSL). Plaintiffs also allege that they have certain contracts that they purportedly expected to continue past April 1, 2025 (*id.* ¶¶ 111, 121, 131, 142), including a contract between MCO Elderplan Inc. and Plaintiff Principle Homecare LLC (Preis Decl. Ex. 2) and contracts between MCO Centers Plan for Healthy Living, LLC and Plaintiffs Marton Care Inc., Prompt Home Care LLC, and Care Connect CDPAP, Inc., (Preis Decl. Exs. 3-5).

Plaintiffs allege that there are over 600 CDPAP FIs currently operating in New York, and that the CDPAP Amendment will "wipe[] out" all of these FIs "but one." Compl. ¶¶ 11, 31. Although the Complaint alleges that the four Plaintiffs have no non-CDPAP operations, it does not allege that all FIs have no such operations. *See id.* ¶ 65. Plaintiffs also allege that the CDPAP Amendment will lead to the eventual termination of their existing contracts with MCOs, and other FIs' contracts with MCOs and LSSDs. Compl. *Id.* ¶ 64. The Complaint further alleges that the CDPAP Amendment will "creat[e] a massive windfall for the one handpicked" FI "as a State-sanctioned monopolist," and Plaintiffs complain they were ineligible to compete for this purported

monopolist windfall. *Id.* ¶¶ 10, 82.[4]

In addition, the Complaint acknowledges that the Statewide FI must subcontract to facilitate the delivery of FI services "with at least one entity per rate setting region with a proven record of delivering services to individuals with disabilities and the senior population." *Id.* ¶ 63. Plaintiffs also acknowledge that the subcontractors must provide any delegated FI services "with cultural and linguistic competency specific to the population of consumers and those of the available workforce." *Id.* Nevertheless, Plaintiffs complain that the CDPAP Amendment requires that these subcontractors must have been providing FI services since January 1, 2012. *Id.*

Plaintiffs bring this action for declaratory and injunctive relief, both facially and as applied, to challenge the CDPAP Amendment. They allege the CDPAP Amendment violates the Contracts Clause (*id.* ¶¶ 146-61); effects a taking of private property without just compensation in violation of the Takings Clause (*id.* ¶¶ 162-81); treats allegedly similarly situated "and equally qualified" FIs unequally in violation of the Equal Protection Clause (*id.* ¶¶ 182-92); and is "arbitrary and irrational" in violation of the Substantive Due Process Clause (*id.* ¶¶ 193-203).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "reviewing court [must] draw on its judicial experience and common sense" to determine plausibility. *Id.* at 677. This standard places a very real burden on Plaintiffs, whose claims cannot go forward if they offer merely "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Id.* at 678. It is only the well-pled facts that the Court accepts as

---

[4] Plaintiffs also allege that the hundreds of FIs in New York give consumers "freedom of choice," and various other purported benefits, and that the transition to a single FI, with subcontractors in every region, will purportedly lead to a disruption in patient care. *See, e.g.*, Compl. ¶¶ 5, 9, 41, 71. However, none of the Plaintiffs are consumers and they have no standing to assert these alleged interests or harms.

true: the Court need not accept Plaintiffs' legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678.

Consequently, the Court's task is to test the legal sufficiency of the Complaint, and to dismiss the action "when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-09 (2d Cir. 2014) (quotation marks omitted). The Court may consider documents appended to or incorporated by reference in the Complaint and may take judicial notice of public documents, as well as all matters of proper judicial notice and public record. *Melendez v. City of N.Y.*, 16 F.4th 992, 996 (2d Cir. 2021); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *Wang v. Pataki*, 396 F. Supp. 2d 446, 453 n.1 (S.D.N.Y. 2005).

Here, it is evident from the face of the Complaint, public records, and other matters of which this Court may take judicial notice that Plaintiffs' case fails as a matter of law.

## ARGUMENT

## I.    THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE A CONTRACTS CLAUSE VIOLATION

Plaintiffs' claim that the CDPAP Amendment violates the Contracts Clause is without merit. Although the Contracts Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts," (U.S. Const., art. I, § 10, cl. 1), the Contracts Clause is implicated only when a state law impairs an agreement that is in force, and even so, "not all laws affecting pre-existing contracts violate the Clause." *Sveen v. Melin*, 584 U.S. 811, 819 (2018). Rather, states retain "broad power to adopt general regulatory measures without being concerned that private contracts will be impaired, or even destroyed, as a result." *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 22 (1977); *see also Sanitation & Recycling Indus., Inc. v. City of N.Y.*, 107 F.3d 985,

994 (2d Cir. 1997).

To establish a Contracts Clause claim, a plaintiff must plausibly allege all elements of a three-part test. *Melendez*, 16 F.4th at 1030. First, a plaintiff must demonstrate that the challenged law is a "substantial impairment" to an existing contract. *Id.*; *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983). When determining whether there is a "substantial impairment," courts consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 584 U.S. at 819. If a substantial impairment is not alleged, the analysis ends and the claim is dismissed. *Id.* But if a substantial impairment is identified, courts consider the next two prongs, *i.e.*, whether the challenged law serves a "legitimate public purpose," and whether it has been designed in an "appropriate and reasonable" manner to achieve that purpose. *Id.*; *Melendez*, 16 F.4th at 1030.

As discussed below, Plaintiffs' claim fails at the first step, both as-applied and facially. *See Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) ("A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications."); *335-7 LLC v. City of N.Y.*, 2021 WL 860153, at *7 (S.D.N.Y. Mar. 8, 2021) (facial challenge requires plaintiff to establish that "no set of circumstances exists under which [the law] would be valid"). Plaintiffs' claim fails because (1) the CDPAP Amendment does not interfere with Plaintiffs' contractual bargains as the contracts themselves expressly provide for their termination if Plaintiffs are barred from participating in a government program such as CDPAP; and (2) Plaintiffs could not reasonably expect that their contracts would renew indefinitely given that they provide services for CDPAP, a heavily regulated government program for which the State has, during the last six years, enacted several laws that required many FIs to stop participating in it. *See* fns. 7-9, *infra*. In any event, the

10

amendment was drawn in a reasonable and appropriate manner to serve a legitimate public purpose.

### A.    The CDPAP Amendment Does Not Substantially Impair Plaintiffs' Contracts

#### 1.    *The Amendment Does Not Interfere with Plaintiffs' Contractual Bargains*

When determining whether there is a violation of the Contracts Clause, courts consider, amongst other factors, "'the extent to which the law undermines the contractual bargain.'" *Everest Foods Inc. v. Cuomo*, 585 F. Supp. 3d 425, 444-45 (S.D.N.Y. 2022) (citing *Melendez*, 16 F.4th at 1030). Here, the Contracts Clause is not even implicated because the CDPAP Amendment does not undermine Plaintiffs' contractual bargains with MCOs based on the clear terms of the contracts referenced in the Complaint. *See* Compl. ¶¶ 111, 121, 131, 142; Preis Decl. Exs. 2-5.[5]

These contracts expressly state that they "shall terminate automatically and immediately in the event that either Party is . . . barred from participating in any government health care program." Preis Decl. Exs. 2-5 at ¶ 11. Pursuant to this unambiguous language, Plaintiffs agreed that their contracts would terminate if they were barred — *i.e.*, "prevented" or "legally prohibited" (Black's Law Dictionary, 12th ed. 2024) — from participating in a government health care program such as CDPAP. *See* Compl. ¶¶ 53, 111, 121, 131, 142. The CDPAP Amendment bars Plaintiffs from participating in the program as of April 1, 2025, when they are required to cease CDPAP operations (unless chosen as a subcontractor). *See* SSL § 365-f (4-a-1)(a). Thus, the CDPAP Amendment does not undermine Plaintiffs' contractual bargain; it is part of Plaintiffs' bargain because the contracts themselves require their "automatic" and "immediate" termination when the FIs cease

---

[5] Notably, Plaintiffs' contracts track the model contract published by DOH and circulated to MCOs ("Model Contract"), which is also referenced in the Complaint. *See* Compl. ¶ 52; Model Contract, available at https://www.health.ny.gov/health_care/medicaid/redesign/docs/cdpas_fi_plan_final_model_agreement.pdf. As alleged in the Complaint, contracts between MCOs and FIs are generally based on this form template and, "as relevant here, contain the same material terms." Compl. ¶ 52.

operations under the statute.

Moreover, the contracts Plaintiffs signed require them to comply with changes to State law and the Medicaid program, and Plaintiffs did not include any provision carving out State laws that curtail their CDPAP operations. Each Plaintiff agreed that "it is *and will continue to* . . . comply with all state and federal laws and regulations, including Medicaid program requirements." Preis Decl. Exs. 2-5 ¶¶ 6 (emphasis added). Similarly, Plaintiffs agreed that "[d]uring the term of this Agreement, [they] shall comply with all applicable federal and state laws and regulations relating to the provision of consumer directed personal assistance." Preis Decl. Exs. 2 ¶ 35; Exs. 3-5 ¶ 36; *see also* Preis Decl. Exs. 2-5 ¶ 5 (agreeing to "comply fully and abide by the rules, policies and procedures that the MCO (a) has established or will establish to meet general or specific obligations placed on the MCO by statute, regulation, Medicaid Contract,[6] or DOH guidelines or policies."). Thus, Plaintiffs bargained for and agreed to comply with any changes to state law and the Medicaid program, including the requirements set forth in the CDPAP Amendment. Furthermore, Plaintiffs' contracts terminate on 60 days notice *without cause*, and therefore MCOs can terminate their contracts with Plaintiffs under the explicit terms of those contracts before entering contracts with the Statewide FI. Preis Decl. Exs. 2-5.

For all of these reasons, the CDPAP Amendment does not interfere with Plaintiffs' contractual bargain.

### 2.    *The CDPAP Amendment Does Not Interfere with Plaintiffs' Reasonable Expectations*

Plaintiffs are also unable to plausibly allege a substantial impairment to their contract rights because they could not reasonably expect to be free of regulatory changes. Plaintiffs operate in the

---

[6] The Medicaid Contract is the applicable agreement between the MCO and DOH "pursuant to which MCO agrees to provide and arrange for the provision of health care services to" Medicaid beneficiaries. *See* Model Contract at 2.

heavily regulated healthcare field and in CDPAP, a program that had already been subject to significant restrictions under several state laws. *See Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 169 (S.D.N.Y. 2020).

When examining whether a substantial impairment exists, the Second Circuit considers the reasonable expectations of a challenging party to be "the touchstone of the analysis." *Id.* (Executive Order did not violate Contracts Clause where landlord plaintiffs could not reasonably expect to be free of regulation in a heavily regulated industry). "Impairment is greatest where the challenged government legislation was wholly unexpected." *Sanitation*, 107 F.3d at 993. On the other hand, entities operating in heavily regulated fields can foresee the regulation of their contracts, and thus typically fail to prevail on Contract Clause challenges. *Id.*; *see also All. of Auto. Mfrs., Inc. v. Currey*, 610 F. App'x 10, 13 (2d Cir. Apr. 7, 2015) ("*AAM II*") (no substantial impairment where a challenged amendment was foreseeable in an industry "subject to close state regulation").

In other words, plaintiffs operating in heavily regulated industries are unable to claim "surprise" that their contractual agreements may be impacted by future "governmental action." *Bldg. & Realty Inst. of Westchester & Putnam Counties, Inc. v. State of N.Y.*, 2021 WL 4198332, at *34 (S.D.N.Y. Sept. 14, 2021), *aff'd*, 2024 WL 1061142, at *4 (2d Cir. Mar. 12, 2024) ("*BRI*") (plaintiff-landlords failed to plead that expansion of rent-stabilization laws substantially impaired contracts because their "reasonable expectations regarding rent-stabilized housing have [not] been disrupted."). This is because businesses that choose to buy into and operate in regulated industries take this into account and "'*purchase subject to further legislation*.'" *Id.* (quoting *Veix v. Sixth Ward Bldg. & Loan Ass'n of Newark*, 310 U.S. 32, 38 (1940) (emphasis added)); *see also Everest Foods, Inc.*, 585 F. Supp. 3d at 445 (restaurant operators should have reasonably foreseen health-related regulations, which were "priced into the contracts" that were allegedly impaired).

13

For example, in *AAM II*, a manufacturing trade association alleged that amendments to a Connecticut statute impaired manufacturers' existing contracts with automobile dealers by barring the recoupment of warranty reimbursement costs. The Second Circuit affirmed the dismissal of the manufacturers' claims at the pleadings stage because, even though the recoupment bar was a new feature of the law, the statutory revisions were foreseeable since the relationship between automobile manufacturers and dealers "has long been the subject of close state regulation." 610 F. App'x at 13; *see also All. of Auto. Mfrs., Inc. v. Currey*, 984 F. Supp. 2d 32, 55-57 (D. Conn. 2013). Notably, the district court dismissed the claim without addressing whether the amendments served a legitimate public purpose since plaintiff was unable to plausibly allege a substantial impairment. *Id.*

Even more than the plaintiff car manufactures, restaurant owners, and landlords in *AAM II*, *Everest Foods, Inc.*, and *BRI*, Plaintiffs here opened businesses in a highly regulated industry that is plainly susceptible to regulatory changes. After all, individual consumers purchase cars and restaurant meals and individual tenants rent apartments, but it is the government — using taxpayer dollars — that funds the Medicaid program and makes all payments that Plaintiffs here receive. Simply put, the CDPAP Amendment was foreseeable given Plaintiffs' participation in the Medicaid program, and they had no reasonable expectation that their contracts with MCOs would renew indefinitely. *See, e.g.*, *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 176 (2d Cir. 1991) (Medicaid provider did not have legitimate expectation of continued participation in Medicaid).

The Second Circuit has made clear that the health care industry is "one of the most heavily regulated industries in the country." *Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 47 (2d Cir. 1997); *Int'l Bhd. of Elec. Workers, Loc. 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 717 (2d Cir. 1998). Medicaid in particular is "highly regulated by New York

law." *Martz v. Inc. Vill. of Valley Stream*, 1993 WL 646408, at \*5 (E.D.N.Y. July 9, 1993), *aff'd*, 22 F.3d 26 (2d Cir. 1994). New York State and DOH's authority to regulate Medicaid is well-established. *See* SSL § 363-a (2) (DOH may promulgate all necessary regulations and guidelines for administration of said program). Consequently, businesses operating within Medicaid are also highly regulated. *See Daniel v. N.Y.S. Dep't of Health*, 2022 WL 21781460, at \*15 (E.D.N.Y. Aug. 27, 2022), *aff'd sub nom.*, *Daniel v. Doe 1 Through Doe 10*, 2024 WL 2131446 (2d Cir. May 13, 2024) (no investment-backed expectation to continue as Medicaid provider in heavily regulated business). As a result, courts have consistently held that businesses funded by Medicaid cannot have a reasonable expectation that they will continue to operate within Medicaid or receive Medicaid funds indefinitely. *See Kelly Kare, Ltd.*, 930 F.2d at 176; Section II.A., *infra*.

Here, Plaintiffs do not plausibly allege that they "could not have anticipated" the April 2024 CDPAP Amendment based on "the history of New York's regulation of Medicaid." *See* Compl. ¶ 84. Since January 2018, the Legislature has enacted several amendments that significantly restricted FIs' operations within CDPAP.[7] Yet Plaintiffs chose to let their annual contracts renew for the next six years. *See* Compl. ¶¶ 106-42.

In 2019, the legislature passed an amendment to significantly reduce the number of FIs that could operate in CDPAP.[8] Although further amendments in 2021 expanded the number of

---

[7] The first such amendment was in January 2018, when the CDPAP Law was amended to create an authorization process, whereby all FIs had to file applications requesting permission to continue operating within CDPAP, and approval was not guaranteed. *See* SSL § 365-f (4-a)(c) (Version effective January 1, 2018). *See also* 2017 Sess. Law News of N.Y. Ch. 57 (S. 2007B).

[8] CDPAP was modified to create a procurement process, whereby FIs could only operate if they were selected to contract with DOH. *See* SSL § 365-f (4-a)(a)(i) (Version effective January 1, 2020). *See also* 2019 Sess. Law News of N.Y. Ch. 57 (S. 1507-C). Any eligible FIs were required to submit bids to the DOH Commissioner in accordance with the terms of SSL § 365-f (4-a)(b). DOH issued its original RFO in December 2019. *See* Request for Offers #20039, available at https://www.health.ny.gov/funding/rfo/inactive/20039/.

Following the FI submission period, *only sixty-eight* FIs were selected in February 2021. *See* DOH Request for Offers (RFO) #20039 New York State Fiscal Intermediaries (FI) for the Consumer Directed Personal Assistance Program

companies that could provide FI services so that Plaintiffs were not ultimately excluded by the 2019 amendment, only FIs that followed certain requirements were permitted to keep operating as FIs for CDPAP following the 2021 amendment.[9] As Plaintiffs have been aware for years that their participation in CDPAP was subject to substantial modification and potential termination they have no reasonable expectation against further statutory changes which impact their businesses.

Moreover, Plaintiffs admit that their contracts, entered with MCOs between 2017 and 2018, have one-year terms. *See* Compl. ¶¶ 53. The CDPAP Amendment passed in April 2024 indicated that CDPAP FIs must cease operations by April 2025. *See* SSL § 365-f (4-a-1)(a). Thus, Plaintiffs have around a year's notice, the length of their contract terms, to wind down their contracts. Plaintiffs nonetheless allege that they currently have contracts that have terms that will continue past April 2025. *See* Compl. ¶¶ 53, 111, 121, 131, 142. However, given the one-year terms, this means they renewed the contracts *after* the CDPAP Amendment. *See also* Preis Decl. Exs. 2-5 (Plaintiffs' Contracts at ¶ 10 (contracts will only renew if not otherwise terminated "as provided by this Agreement or either Party gives sixty (60) days advance written notice prior to the renewal date")). Regardless, as Plaintiffs admit, their contracts can be terminated at anytime without cause on 60 days-notice. Compl. ¶ 53; Preis Decl. Exs. 2-5 (Plaintiffs' Contracts at ¶ 11).

Additionally, the extent to which Plaintiffs or other FIs can "safeguard" or "reinstate" their roles as subcontractors to the Statewide FI also weighs against finding a substantial impairment and defeats any facial challenge to the CDPAP Amendment. *See Sveen*, 584 U.S. at 819; *335-7 LLC*, 2021 WL 860153, at *7 (facial challenge requires that "no set of circumstances exists under

---

(CDPAP) Lead Fiscal Intermediary Contracting Attestation Form and Supporting Information, available at https://www.health.state.ny.us/funding/rfo/inactive/20039/docs/questions_and_answers_attestation.pdf.

[9] The CDPAP Law was amended separately in April 2021 and then in April 2022, further increasing the number of FIs that could register with DOH. *See* SSL § 365-f (4-a)(b-2) - (b-3) (Version effective April 19, 2021); SSL § 365-f (4-a)(b-1) - (b-3) (version effective April 9, 2022). *See also* 2021 Sess. Law News of N.Y. Ch. 57 (S. 2507-C); 2022 Sess. Law News of N.Y. Ch. 57 (A. 9007-C).

which [the challenged law] would be valid"). Although FIs' current contracts with MCOs will be terminated pursuant to their terms, FIs can still potentially operate as subcontractors with the Statewide FI. Plaintiffs complain that they are ineligible to be one of the subcontractors selected for each of the four rate-setting regions because they have not been providing FI services since 2012 (Compl. ¶ 95), but there is nothing in the law prohibiting the Statewide FI from subcontracting with additional FIs that do not meet that requirement. *See* SSL § 365-f (4-a)(a)(ii-b). In fact, it has already been announced that PPL, the selected Statewide FI, will subcontract with more than 30 regional partners in addition to the FIs selected as core subcontractors for each of the four rate-setting regions. *See* Press Release, *supra* fn. 2.

Regardless, Plaintiffs fail to plausibly allege that they had a reasonable expectation that their contracts would renew indefinitely and therefore cannot plead a substantial impairment. Thus, their Contracts Clause claim necessarily fails.

### B.    The CDPAP Amendment Has a Legitimate Public Purpose

Where, as here, a Contracts Clause claim does not adequately allege a "substantial" impairment of pre-existing contract rights, it is unnecessary to consider the remaining factors. *See e.g.*, *Elmsford Apartment Assocs.*, 469 F. Supp. 3d at 169; *BRI*, 2021 WL 4198332, at *34 (Contracts Clause claim dismissed on ground that plaintiffs failed to plausibly allege substantial impairment). But even assuming, *arguendo*, that the CDPAP Amendment imposed a substantial impairment, Plaintiffs' claim nonetheless fails because the amendment serves a "significant and legitimate public purpose." *Energy Reserves*, 459 U.S. at 411-12; *see also Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 367 (2d Cir. 2006) (Contracts Clause accommodates "the inherent police power of the state 'to safeguard the vital interests of its people.'").

The CDPAP Amendment was appropriately enacted to address a "'broad, generalized

economic or social problem,"' impacting CDPAP and Medicaid, and thus Plaintiffs, and FIs generally, were not unfairly targeted as a group through its passage. *See Melendez*, 16 F.4th at 1037 (citing *Allied Structural Steel Co.*, 438 U.S. 234, 250 (1978)). On the contrary, the purpose of the amendment was to save on administrative costs and improve efficiency. *See* Compl. ¶¶ 9, 66, 68 (CDPAP Amendment was intended to reduce waste, fraud, and abuse).

There are more than 600 FIs operating in the State. *See* Compl. ¶ 8. The current FI model in New York is an outlier when compared to the rest of the nation, as many states with programs comparable to CDPAP rely on only one or a few FIs. *See* Preis Decl. Ex. 6 (2025 NYS Enacted Financial Plan at 113). Since the cost of CDPAP has increased by 1,200 percent since 2016, the State is concerned about further unsustainable growth draining the Medicaid program, which pays the participating FIs. *Id.* The State Division of the Budget ("DOB") estimates that the transition to a Statewide FI will significantly reduce these administrative costs by about $200 million in the 2025 fiscal year alone. *Id.* at 23, 35. This reduction in costs will help the long-term viability of CDPAP for those who rely on the program and ensure that the critical personal care and nursing services PAs provide to consumers will not be reduced. Ultimately, the transition will allow for greater fiscal accountability, while maintaining the eligibility and care provided to participating consumers.

Furthermore, the CDPAP Amendment will improve efficiency, as DOH can more easily oversee one Statewide FI with subcontractors, than over 600 individual FIs. The State will be able to monitor compliance with state and federal rules more effectively, and DOH will have a greater ability to track Medicaid payments through one Statewide FI to PAs and analyze data for patterns that may be indicative of fraud, waste, and abuse. *See* Preis Decl. Ex. 1 (*Corning Council*, Index No. 908147-24, at 8) (discussing the efficiencies that will result from the CDPAP Amendment).

Finally, the goals of the CDPAP Amendment are certainly legitimate. Switching from 600 FIs to one Statewide FI is intended to be more efficient and reduce administrative costs so that more funds can be spent on patient care. Federal law specifically requires that Medicaid payments "are consistent with the efficiency, economy, and quality of care." 42 U.S.C. § 1396a(a)(30)(A). Further, the purpose of the Medicaid is to make medically necessary covered health and medical services available to eligible individuals; its purpose is *not* to fund companies performing administrative functions. *See* SSL § 363; 42 U.S.C. § 1396.

## C.    The CDPAP Amendment Was Designed in an "Appropriate and Reasonable" Manner

The CDPAP Amendment is a "reasonable means" to reduce administrative costs so that more funds can be spent on patient care, and therefore does not violate the Contracts Clause. *See Melendez*, 16 F.4th at 1038. Where, as here, a challenged law is only alleged to impair private contracts, and not those to which the State is a party, courts "must accord substantial deference to the [State's] conclusion that its approach reasonably promotes the public purpose for which [it] was enacted." *Elmsford Apartment Assocs.*, 469 F. Supp. 3d at 169; *Buffalo Teachers Fed'n*, 464 F.3d at 369; *Melendez*, 16 F.4th at 1050-51. The State's decision to amend the CDPAP Law pertains to a matter of social and economic concern that is entitled to great deference.

The *Melendez* Court identified five factors to be considered in "totality" when determining whether a challenged law has been designed in a reasonable manner and whether a Contracts Clause claim can be dismissed: (1) whether the challenged law caused a "temporary" or "limited" impairment of a contract; (2) whether the challenged law was an appropriate means for achieving its professed public purpose; (3) who bears the allocation of the economic burden; (4) whether the challenged law was conditioned on need; and (5) whether impacted parties were compensated for damages or losses sustained because of the challenged law's alleged impairment. *Id*. at 1038-46.

19

Applying these factors demonstrates that, in totality, the CDPAP Amendment is reasonable and appropriate. As discussed above, the CDPAP Amendment does not impair Plaintiffs' contracts, it terminates them pursuant to the provisions therein. Even assuming, however, that the amendment would permanently impact Plaintiffs' existing contracts, it is reasonably designed to achieve the professed public purpose of administrative cost-saving and efficiency. The DOB estimates that the CDPAP Amendment will cut annual costs by about $200 million within the massive CDPAP program, while simultaneously making the program more efficient. Unlike in *Melendez*, where the Court found that the challenged law did not help small businesses reopen after the COVID-19 pandemic because guarantors alone were awarded unconditional relief; here, the public at large will benefit from the cost savings of the CDPAP Amendment, as will Medicaid patients, who are — unlike FIs — the intended beneficiaries of Medicaid. *See Melendez*, 16 F.4th at 1040-41. Money that would otherwise be spent on administrative costs will instead be spent on Medicaid patient care, and the more efficiently functioning program will greatly benefit the needs of CDPAP consumers.

Next, when "the burden of contractual impairment [is] tailored to the party causing the public harm that the state sought to mitigate," courts typically defer to the state's determination that the means were reasonable to achieve a challenged law's stated purpose. *Id.* at 1042; *see e.g. Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 504-06 (1987) (refusing to question determination that regulation of coal companies was appropriate environmental measure); *Sanitation*, 107 F.3d at 994 ("when reviewing a law that purports to remedy a pervasive economic or social problem, our analysis is carried out with a healthy degree of deference" to the legislature). In this instance, the harm is the high administrative costs of CDPAP, and the cause is that there are over 600 FIs. The burden of the contractual impairment will fall on the shoulders of the

hundreds of FIs that have led to the "unsustainable" growth of administrative costs for CDPAP.

Although Plaintiffs will not be compensated for damages or losses sustained as a result of the CDPAP Amendment, their contracts were never assured to renew indefinitely as FIs operate in a heavily regulated industry. Moreover, Plaintiffs may not be locked out of involvement with CDPAP, as they could potentially subcontract with the selected Statewide FI.

Further, Plaintiffs acknowledge that there was significant discussion regarding the pros and cons of the CDPAP Amendment before it was passed. Compl. ¶¶ 7, 72-79. Plaintiffs of course focus only on the cons, but following debate, those cons were rejected by the State legislature, which requires deference. *See e.g.*, *Elmsford Apartment Assocs.*, 469 F. Supp. 3d at 169; *Buffalo Teachers Fed'n*, 464 F.3d at 369; *Melendez*, 16 F.4th at 1050-51.

In light of the foregoing, the CDPAP Amendment was reasonably and appropriately designed. Plaintiffs fail to state a Contracts Clause claim.

## II.    THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE A TAKINGS CLAUSE VIOLATION

Plaintiffs' claims pursuant to the Fifth Amendment Takings Clause also fail. To state a takings claim, a plaintiff must show that (1) they have a property interest protected by the Fifth Amendment; (2) they were deprived of that interest by the government for public use; and (3) they were not afforded just compensation. *Ganci v. N.Y.C. Transit Auth.*, 420 F. Supp. 2d 190, 195 (S.D.N.Y.), *aff'd*, 163 F. App'x 7 (2d Cir. 2005); *see also Knick v. Twp. of Scott, Penn.*, 588 U.S. 180, 184 (2019). The Complaint does not make such a showing.

### A.    Plaintiffs Fail to Allege a Protected Property Interest

Plaintiffs fail at the first step because they have no valid property interest in future Medicaid payments or in continued participation as FIs in the Medicaid program. *See Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 91-92 (2d Cir. 2015) (no property interest in

Medicaid reimbursement or provider's continued participation in Medicaid); *Tekkno Lab'ys, Inc. v. Perales*, 933 F.2d 1093, 1098 (2d Cir. 1991) (same); *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 582 (2d Cir. 1989) (no property interest in continued participation in Medicaid); *Grossman v. Axelrod*, 646 F.2d 768, 771 (2d Cir. 1981) (no property interest in reimbursement); *cf. Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (applying same standard to determine property interest under procedural due process for takings claim); *Rosenfeld v. Port Auth. of N.Y. & N.J.*, 108 F. Supp. 2d 156, 165 (E.D.N.Y. 2000) (recognizing the same standard applies).

Indeed, as explained by the Second Circuit, the Constitution does not create protected property rights; "'[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)); *see also Barzilay v. City of N.Y.*, 610 F. Supp. 3d 544, 605 (S.D.N.Y. 2022) (same). "Further, for a person to have a property interest in a property-sourced benefit, the person 'must have more than an abstract need or desire for it' and 'more than a unilateral expectation of it.'" *Barzilay*, 610 F. Supp. 3d at 605 (quoting *Roth*, 408 U.S. at 577). Plaintiffs' alleged property interest certainly cannot stem from state law, as the state law that originally permitted them to operate within CDPAP and receive Medicaid funds has been amended. *See* SSL § 365-f.

Moreover, it was determined long ago that New York laws do not give businesses a property interest in continued participation in Medicaid or future Medicaid payments. *Grossman*, 646 F.2d at 771 ("[U]nder New York law, Medicaid providers have no property right in prospective reimbursement payments."). This principle has repeatedly been reaffirmed. *See, e.g.*, *Concerned Home Care Providers*, 783 F.3d at 91-92; *Kelly Kare, Ltd.*, 930 F.2d at 176; *Daniel*, 2022 WL 21781460, at *15. For example, in *Concerned Home Care Providers*, the Second Circuit

affirmed the dismissal of plaintiff's claims because "'[i]t is fundamental that a Medicaid provider has no property interest in or contract right to reimbursement at any specific rate or, for that matter, to continued participation in the Medicaid program at all.'" 783 F.3d at 91-92 (quoting *Rye Psych. Hosp. Ctr. v. New York*, 177 A.D.2d 834 (3d Dep't 1991), and citing *Kaye v. Whalen*, 44 N.Y.2d 754 (1978); *Senape v. Constantino*, 936 F.2d 687 (2d Cir. 1991)). Similarly in *Daniel*, the court found that plaintiff, who owned a Medicaid transportation business, failed to allege a takings claim because he was well aware that Medicaid "is a heavily regulated business" and thus had "no valid property interest in continued participation as a Medicaid provider . . . nor in future reimbursement payments." 2022 WL 21781460, at *15. Under this clear case law, Plaintiffs cannot demonstrate a valid property interest in continued participation as Medicaid FIs. *See also* Section I.A.2., *supra*.

In any event, Plaintiffs' contracts with private MCOs do not rise to the level of a constitutionally protected property interest. *See Ganci*, 420 F. Supp. 2d at 202 (applying Second Circuit's "repeated" holdings that routine commercial contracts do not give rise to a protected property interests to takings claim). "[T]he type of interest a person has in the enforcement of an ordinary commercial contract often 'is qualitatively different from the interests the Supreme Court has thus far viewed as 'property' entitled to'" constitutional protection, especially for private contracts. *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994) (quoting *S & D Maint. Co. v. Goldin*, 844 F.2d 962 (2d Cir. 1988)); *see also Eng v. Cash*, 2012 WL 1031421, at *3-4 (E.D.N.Y. Mar. 8, 2012), *report and recommendation adopted*, 2012 WL 1030475 (E.D.N.Y. Mar. 27, 2012) (finding no protected property interest in private contract). The fact that Plaintiffs' contracts are terminable without cause on 60-days notice further demonstrates that they are not a constitutionally protected property interest. *See S & D Maint. Co.*, 844 F.2d at 968 ("The unconditional termination power . . . is fatal to [plaintiff's] asserted property interest in non-

termination."); *Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 383 (S.D.N.Y. 2014) (recognizing Second Circuit precedent that there is no protected property interest for contracts that are terminable at will); *A.F.C. Enterprises v. N.Y.C. Sch. Const. Auth.*, 1999 WL 1417210, at *10 (E.D.N.Y. June 29, 1999) (noting that the Second Circuit "has repeatedly reaffirmed the principle that contractors do not acquire protected property rights in terminable or future contracts") (citing, *inter alia*, *Sanitation*, 107 F.3d at 995).

Further, courts have also found there is no right to renewal nor a constitutionally protected property interest in a plaintiff's expectation of renewal. *Rehman v. SUNY at Stony Brook*, 596 F. Supp. 2d 643, 657 (E.D.N.Y. 2009). Plaintiffs admit their contracts are only for one-year terms, and the CDPAP Amendment gave them close to a years' notice to wind down those contracts. Compl. ¶¶ 53, 59-61; *see also Radwan v. Manuel*, 55 F.4th 101, 126-27 (2d Cir. 2022) (citing *Perry v. Sindermann*, 408 U.S. 593, 603 (1972), to note that a subjective expectancy of renewal is not a protected interest). To the extent any of Plaintiffs' contracts run past April 1, 2025, it is because they renewed them *after* the CDPAP Amendment was passed.

Because Plaintiffs do not have a property interest protected by the Fifth Amendment, the Court need go no further, as Plaintiffs' Takings claim fails both facially and as applied. *Ganci*, 420 F. Supp. 2d at 203 ("[T]he Court finds that the rights at issue here are not 'property' within the meaning of the Takings Clause, and therefore holds that plaintiffs have failed to state a claim for which relief can be granted.").

### B.    Regardless, Plaintiffs Fail to Allege a Takings Claim

In any event, even if Plaintiffs had a valid property interest — which they do not — they still would not have a plausible takings claim. The regulatory takings inquiry "aims to identify regulatory actions that are functionally equivalent to the classic taking in which government

directly appropriates private property or ousts the owner from his domain." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005). As a result, "[a] party challenging governmental action as a regulatory taking bears a substantial burden." *Ganci*, 420 F. Supp. 2d at 203 (citing *United States v. Sperry Corp.*, 493 U.S. 52 (1989)). In addition, because the regulatory takings analysis is necessarily fact-specific, "facial challenges brought under the Takings Clause 'face an uphill battle,'" and "the only issue properly before th[e] Court is 'whether the mere enactment of the [statute] constitutes a taking.'" *Elmsford Apartment Assocs.*, 469 F. Supp. 3d at 165 (quoting *Keystone Bituminous Coal Ass'n*, 480 U.S. at 495-96). Plaintiffs do not meet their burden for either an as-applied or facial challenge.

There are two types of regulatory takings: categorical and non-categorical. A categorical regulatory taking involves "'the extraordinary circumstance when *no* productive or economically beneficial use of *land* is permitted.'" *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 330 (2002) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992)) (second emphasis added). Thus, "the categorical rule would not apply if the diminution in value were 95% instead of 100%." *Id.* On the other hand, a non-categorical taking may result from "[a]nything less than a 'complete elimination of value,' or a 'total loss.'" *Id.* To determine whether a non-categorical taking has occurred, courts apply a three-factor test first set forth in *Penn Central Transport, Co. v. City of New York*, 438 U.S. 104 (1978).

Any categorical takings claim fails. Initially, categorical takings likely only apply to land, and there is no indication in case law that they apply to contracts. As recognized by the Second Circuit, "[t]he cases in which the Supreme Court has applied *Lucas*'s total takings rule have involved real property, and it is unclear whether that case's per se rule should be applied to purported takings of other types of property, such as intellectual property, personal property, or a

security interest." *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 264-65 (2d Cir. 2014); *see also Greater Chautauqua Fed. Credit Union v. Marks*, 600 F. Supp. 3d 405, 428 (S.D.N.Y. 2022), *modified sub nom. Greater Chautauqua Fed. Credit Union v. Quattrone*, 2023 WL 6037949 (S.D.N.Y. Sept. 15, 2023) ("[T]he Supreme Court's 'total takings' jurisprudence, and the application of it by the Circuits, has repeatedly highlighted that it applies to deprivations of 'land.'") (citing, *inter alia*, *1256 Hertel Ave. Assocs.*, 761 F.3d at 264; *Horne v. Dep't of Agric.*, 576 U.S. 350 (2015); *Md. Shall Issue v. Hogan*, 963 F.3d 356, 364 n.4 (4th Cir. 2020)).

Regardless, any categorical taking claim fails both as applied and facially, because Plaintiffs cannot show that the Defendant's actions deprived them and every single other FI of "all economically beneficial or productive use" of their businesses. *See, e.g.*, *McCarthy v. Cuomo*, 2020 WL 3286530, at *5 (E.D.N.Y. June 18, 2020) (club owner was unlikely to succeed on categorical claim because he "could, for example, offer food and drinks . . . for take-out or delivery"); *Bimber's Delwood, Inc. v. James*, 496 F. Supp. 3d 760, 784 (W.D.N.Y. 2020) (club owners' categorical claim unlikely to succeed because plaintiffs were not "*required* to be closed" under executive orders restricting food and beverage services). Similar to *Bimber's Delwood*, the CDPAP Amendment does not *require* Plaintiffs or other FIs to close their businesses; instead, it amends the law so that there is one Statewide FI operating *for CDPAP*, with subcontractors. SSL § 365-f. First, nothing prevents Plaintiffs from other business ventures, such as acting as FIs for other Medicaid services or for Medicare, or acting as a vendor in other similar industries, such as payroll or health insurance processing. Second, as discussed above, Plaintiffs or other FIs could seek to be subcontractors of the Statewide FI, and over 30 FIs have already been selected. *See* I.A.2., *supra*. Thus, Plaintiffs cannot establish a categorical taking.

Nor do Plaintiffs have a cognizable, non-categorical takings claim under *Penn Central*,

which requires a weighing of three factors: (1) "the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations" and (3) "the character of the governmental action." 438 U.S. at 124. To begin, the Complaint once again ignores the possibility of FIs becoming subcontractors or seeking different business ventures. *Cf. McCarthy*, 2020 WL 3286530, at * 5 (plaintiff's "vague and conclusory" allegations that his club lost all business due to COVID-19 restrictions insufficient for takings claim "because his choice to close the club entirely was not mandated by the regulation"); *Haller v. U.S. Dep't of Health & Hum. Servs.*, 2024 WL 290440, at *2 (2d Cir. Jan. 23, 2024) ("We have observed that loss of future profits — unaccompanied by any physical property restriction — provides a slender reed upon which to rest a takings claim.").

The investment-backed expectation requirement certainly does not weigh in Plaintiffs' favor. Plaintiffs became FIs under Medicaid fully aware that it is a heavily regulated program, and therefore they cannot have reasonable expectations to continued participation as FIs under that program. *See* Section II.A., *supra*; *cf. Elmsford Apartment Assoc.*, 469 F. Supp. 3d at 166-67 (rent controls did not disrupt landlords' investment-backed expectations because the rental business is heavily regulated). For example, the court in *Daniel* found that the "investment-backed expectation requirement also weighs against" plaintiff's takings claim because he operated a transportation provider under Medicaid, "and was aware that it is a heavily regulated business." 2022 WL 21781460, at *15. The court found that, "'[w]here a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and thus there can be no taking.'" *Id.* (quoting *Garelick v. Sullivan*, 987 F.2d 913 (2d Cir. 1993)). That Plaintiffs may be completely excluded from participating in Medicaid or receiving Medicaid funds going forward does not change the analysis. *See id.* at *14.

Finally, with respect to the character of the governmental action, the Supreme Court has held that a taking "may more readily be found when the interference with property can be characterized as a physical invasion by government . . . than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 U.S. at 124. This case plainly fits within the latter category. Here, as described in detail above, the CDPAP Amendment promotes the public good because it is intended to reduce waste, fraud, and abuse in Medicaid so that funds can be spent on patient care rather than administrative costs. *See* Sections I.B & I.C., *supra*; Compl. ¶¶ 9, 66, 68 (acknowledging that the CDPAP Amendment was intended to reduce waste, as well as fraud and abuse); 42 U.S.C. § 1396a(a)(30)(A) (State's Medicaid payments are required to be "consistent with the efficiency, economy, and quality of care."); SSL § 363 & 42 U.S.C. § 1396 (the purpose of the Medicaid is to make medically necessary covered health and medical services available to eligible individuals).

As a result, Plaintiffs fail to allege a plausible takings claim.

## III.    THE CDPAP AMENDMENT DOES NOT DENY PLAINTIFFS EQUAL PROTECTION

Plaintiffs' claim that the CDPAP Amendment violates the Equal Protection Clause of the Fourteenth Amendment is likewise without merit. When an equal protection violation is raised without simultaneously alleging discrimination based upon membership in a protected class, plaintiffs are required to allege that they have been "intentionally treated differently from others similarly situated and no rational basis exists for that different treatment." *Progressive Credit Union v. City of N.Y.*, 889 F.3d 40, 49 (2d Cir. 2018) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). In addition, to succeed on such a "class-of-one" claim, plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Id*. Plaintiffs' claim fails under these standards.

Under rational basis review, "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *see also Dandridge v. Williams*, 397 U.S. 471, 486 (1970). Further, the Supreme Court holds that "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (*per curiam*). Accordingly, a strong presumption of validity is warranted for "a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights." *Beach Commc'ns, Inc.*, 508 U.S. at 313; *see, e.g., Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 462 (1988). Indeed, as recently found by a state court considering the CDPAP Amendment, it is "improper . . . to assess the wisdom of a legislative enactment." Preis Decl. Ex. 1 (*Corning Council*, Index No. 908147-24, at 8).

Here, the requirement that the Statewide FI must have provided comparable services "on a statewide basis with at least one other state" is rationally designed to ensure the selected FI has the capacity to operate such a statewide program in New York. *See Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (a statutory classification is not found to violate the Equal Protection Clause when a rational relationship exists between the alleged disparate treatment and proposed legitimate state interest). The court in *Corning Council* held that this requirement of the CDPAP Amendment was rational, as it would "minimiz[e] service disruption" within CDPAP and "allow an efficient transition" to a single statewide provider. Preis Decl. Ex. 1 at 8, 10.

Plaintiffs, who have no experience providing statewide FI services, do not plausibly allege that they are similarly situated to an FI that does. As a result, the Court should reject Plaintiffs' conclusory claim that they are "similarly situated" to qualified FIs. *See* Compl. ¶¶ 186-87; *see*

*Killoran v. Westhampton Beach Sch. Dist.*, 2023 WL 4503274, at *2 (2d Cir. July 13, 2023) (affirming dismissal of equal protection claim where plaintiffs made conclusory assertions to demonstrate similarities to another group); *Gray Gables Corp. v. Arthur*, 2022 WL 905393, at *3 (2d Cir. Mar. 29, 2022) (a "conclusory allegation is not enough to state a so-called class-of-one equal protection claim"). Indeed, Plaintiffs simply do not have comparable statewide administrative experience deemed necessary by the Legislature to qualify as the Statewide FI.[10] *See Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010) (class of one claim fails unless "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment"). The Statewide FI that was ultimately selected, on the other hand, has demonstrated the ability to immediately assume FI responsibilities and minimize potential service disruptions. *See* Press Release, *supra* fn. 2.

In addition, Plaintiffs are incorrect that the CDPAP Amendment excluded all New York FIs from consideration. Any FI operating in New York was eligible to submit a bid, as long as they had also provided similar FI services "on a statewide basis with at least one other state." *See* SSL § 365-f (4-a)(b)(i)(B). To the extent Plaintiffs argue the CDPAP Amendment irrationally prioritized statewide experience over experience with New York communities, their claims must be rejected because the CDPAP Amendment requires that the Statewide FI be able "to provide any delegated [FI] services with cultural and linguistic competency specific to the population of consumers and those of the available workforce." SSL § 365-f (4-a)(a)(ii-b). Further, the selected Statewide FI has already announced "diverse alliance of subcontracted partners" that will "ensure multilingual, culturally sensitive home care is easily accessible." *See* Press Release, *supra* fn. 2.

---

[10] For example, Plaintiffs admit that they only operate in between four to 17 counties within New York (Compl. ¶¶ 107, 117, 127, 138), whereas PPL has substantial experience operating in 21 states and contracting with 15 state Medicaid programs. *See* https://pplfirst.com/programs/.

In sum, because there is plainly a rational basis in selecting a provider that has prior statewide FI experience to be the Statewide FI, Plaintiffs cannot plausibly allege an equal protection violation and their claims should be dismissed. *See Progressive Credit Union*, 889 F.3d at 49-50.

## IV. PLAINTIFFS FAIL TO STATE A SUBSTANTIVE DUE PROCESS CLAIM

The Complaint also fails to plausibly allege that the CDPAP Amendment violates Plaintiffs' substantive due process rights.

"'The law in [the Second] Circuit is clear that where, as here, a statute neither interferes with a fundamental right nor singles out a suspect classification, we will invalidate that statute on substantive due process grounds only when a plaintiff can demonstrate that there is no rational relationship between the legislation and a legitimate legislative purpose.'" *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015) (quoting *Molinari v. Bloomberg*, 564 F.3d 587 (2d Cir. 2009)). Moreover, substantive due process only protects against "egregious conduct which . . . can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (quotation marks omitted); *Collins v. City of Marker Heights*, 503 U.S. 115, 125-28 (1992) (substantive due process claim only survive if state's actions were willful, arbitrary, or conscience shocking in a constitutional sense). It does not forbid government actions that might be deemed arbitrary or capricious, *see id.*, nor does it protect "against government action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (quotation marks omitted).

First, Plaintiffs fail to allege a fundamental right, or that they are members of a suspect class. As detailed above, Plaintiffs have no protected right to continued access to Medicaid funds, let alone a *fundamental* right protected by substantive due process. *See* Section II.A., *supra*;

*Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring) ("Even if one assumes the existence of a property right, . . . not every such right is entitled to the protection of *substantive* due process," which rights "are created only by the Constitution." (emphasis added)). *See also, e.g.*, *Savage v. Mills*, 2020 WL 4572314, at *8 (D. Maine. Aug. 7, 2020) ("Harm to business interests, however, is not a 'plain, palpable invasion of rights.'") (quoting *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702 (2010)); *SH3 Health Consulting, LLC v. Page*, 459 F. Supp. 3d 1212, 1226 (E.D. Mo. 2020) ("The Eighth Circuit has consistently rejected right-to-conduct-business/right-to-earn-a-living due-process claims."); *cf. PCG-SP Venture I LLC v. Newsom*, 2020 WL 4344631, at *6-8 (C.D. Cal. June 23, 2020) (holding that claimed "right to labor" only necessitated rational basis review). Plaintiffs are also incorrect that they have a "constitutionally protected interests in operating their businesses free from unreasonable governmental interference" under the Substantive Due Process Clause. *See Stop the Beach Renourishment*, 560 U.S. at 721 ("[T]he 'liberties' protected by substantive due process do not include economic liberties."); *Wigginess Inc. v. Fruchtman*, 482 F. Supp. 681, 689 n.11 (S.D.N.Y. 1979), *aff'd*, 628 F.2d 1346 (2d Cir. 1980) (finding no "fundamental right to work in the common occupations of the community"). This is especially true given that Plaintiffs' businesses are entirely funded and extensively regulated by the government, and their contracts are explicitly subject to changes in state law and the Medicaid program. *See* Section I.A., *supra*; *In re NYAHSA Litig.*, 318 F. Supp. 2d 30, 41 (N.D.N.Y. 2004), *aff'd sub nom. N.Y. Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006) (if changes to Medicaid reimbursement have a legitimate purpose, they "cannot form the basis of a substantive due process claim").

Next, the CDPAP Amendment is reasonably related to a legitimate legislative purpose. *See Bryant v. N.Y.S. Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012) (when right allegedly infringed upon "is not fundamental, the governmental regulation need only be reasonably related to a legitimate state objective."); *Wigginess Inc.*, 482 F. Supp. at 689 n.11 ("State statutes regulating business activity need only be rationally related to a legitimate state objective."). As discussed above, the decision to switch from 600 FIs to a Statewide FI in order to save on administrative costs and permit more effective oversight by DOH is rationally related to the legitimate public interest of preventing waste, fraud, or abuse in Medicaid, and Plaintiff fails to plausibly allege otherwise.[11] *See In re NYAHSA Litig.*, 318 F. Supp. 2d at 41 ("control of Medicaid costs . . . is indeed a legitimate and laudable objective of the State"). Further, it is Plaintiffs' burden to "discredit any conceivable basis which could be advanced to support the challenged" rule, "regardless of whether that basis has a foundation in the record" or whether that basis "actually motivated" the rule at issue. *Beatie v. City of N.Y.*, 123 F.3d 707, 713 (2d Cir. 1997); *see also Sensational Smiles*, 793 F.3d at 285 (constitution "does not require perfect tailoring of economic regulations"). Plaintiffs have failed to do so here. Moreover, switching from 600 FIs to a single Statewide FI to save on administrative costs is certainly not "egregious conduct." *See Smith*, 298 F.3d at 173.

This case fails to state a viable claim and should therefore be dismissed, with prejudice.

---

[11] To the extent Plaintiffs allege, incorrectly, that the CDPAP Amendment is irrational because it will have "a deleterious impact on consumers" by purportedly causing service disruptions (*see* Compl. ¶ 198), Plaintiffs lack standing to raise such constitutional arguments. *See Mental Hygiene Legal Serv. v. Cuomo*, 13 F. Supp. 3d 289, 297 (S.D.N.Y. 2014), *aff'd*, 609 F. App'x 693 (2d Cir. 2015) ("'[A] litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third-parties.) (quoting *Powers v. Ohio*, 499 U.S. 400 (1991)); *Great Atl. & Pac. Tea Co. v. Town of E. Hampton*, 997 F. Supp. 340, 349 (E.D.N.Y. 1998) ("a party must assert his or her own legal rights and interests, and cannot rest the claim to relief on the legal rights or interests of third parties") (citing *Warth v. Seldin*, 422 U.S. 490 (1975)).

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant his motion to dismiss the Complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       November 1, 2024

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant*

By:   /s/ Erin R. McAlister        
Erin R. McAlister
Jessica Preis
Assistant Attorneys General
28 Liberty Street
New York, NY 10005
(212) 416-8817 | jessica.preis@ag.ny.gov
(212) 416-6236 | erin.mcalister@ag.ny.gov