UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――

PRINCIPLE HOMECARE, LLC, MARTON CARE
INC., PROMPT HOME CARE LLC, and CARE
CONNECT CDPAP, INC.,

        Plaintiffs,

    v.

JAMES V. MCDONALD, in his official capacity as
Commissioner of the New York State Department of
Health,

        Defendant.

―――――――――――――――――――――――

No. 24-cv-07071-MMG

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER
## SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant*
28 Liberty Street
New York, New York 10005
(212) 416-6236

ERIN R. MCALISTER
JESSICA PREIS
Assistant Attorneys General
   *of Counsel*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

I.   PLAINTIFFS' CONTRACTS CLAUSE CLAIM FAILS ......................................................... 2

   A.   The CDPAP Amendment Does Not Substantially Impair Plaintiffs' Contracts ................... 2

   B.   The CDPAP Amendment Serves a Significant and Legitimate Public Purpose and Was
        Designed in an Appropriate and Reasonable Manner ........................................................ 7

II.  PLAINTIFFS' TAKINGS CLAIM FAILS ......................................................................... 8

   A.   Plaintiffs Fail to Allege a Protected Property Interest ........................................................ 8

   B.   Regardless, Plaintiffs Fail to Allege a Takings Claim ...................................................... 12

III. PLAINTIFFS FAIL TO ALLEGE AN EQUAL PROTECTION VIOLATION ................. 14

IV.  PLAINTIFFS FAIL TO STATE A SUBSTANTIVE DUE PROCESS CLAIM .................... 15

CONCLUSION .................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1256 Hertel Ave. Assocs., LLC v. Calloway*,
   761 F.3d 252 (2d Cir. 2014) ..................................................................................................13

*Bd. of Regents of State Colleges v. Roth*,
   408 U.S. 564 (1972) ...............................................................................................................15

*Beatie v. City of N.Y.*,
   123 F.3d 707 (2d Cir. 1997) ............................................................................................. 15-16

*Bldg. & Realty Inst. of Westchester & Putnam Cntys, Inc. v. State of N.Y.*,
   No. 19-CV-11285 (KMK), No. 20-CV-634 (KMK), 2021 WL 4198332 (S.D.N.Y. Sep.
   14, 2021), *aff'd*, Nos. 21-2526, 21-24482024, WL 1061142 (2d Cir. Mar. 12, 2024)..........7

*Buffalo Tchrs. Fed'n v. Tobe*,
   464 F.3d 362 (2d Cir. 2006) ........................................................................................10-11, 14

*Concerned Home Care Providers, Inc. v. Cuomo*,
   783 F.3d 77 (2d Cir. 2015) .......................................................................................... 1, 9, 11

*Connolly v. Pension Ben. Guar. Corp.*,
   475 U.S. 211 (1986).............................................................................................................9-10

*Corning Council v. McDonald*,
   No. 908147-24 (Sup. Ct. Albany Cnty. Sept. 30, 2024) ..........................................................1

*Daniel v. N.Y.S. Dep't of Health*,
   No. CV 21-4097 (DG)(AYS), 2022 WL 21781460 (E.D.N.Y. Aug. 27, 2022), *aff'd sub
   nom, Daniel v. Doe 1 Through Doe 10*, Nos. 21-2479-cv; 23-323-cv,  2024 WL 2131446 (2d
   Cir. May 13, 2024).............................................................................................................1, 13

*DoorDash, Inc. v. City of N.Y.*,
   692 F. Supp. 3d 268 (S.D.N.Y. 2023).............................................................................2, 6, 12

*Eng v. Cash*,
   No. CV 10–3117(SJF)(WDW), 2012 WL 1031421 (E.D.N.Y. Mar. 8, 2012).................11

*Ganci v. NYC Transit Authority*,
   420 F. Supp. 2d 190 (S.D.N.Y 2005).....................................................................................14

*Gersman v. Grp. Health Ass'n, Inc.,*
   725 F. Supp. 573 (D.D.C. 1989) ................................................................................4

*Goe v. Zucker,*
   43 F.4th 19 (2d Cir. 2022) ...............................................................................15-16

*Greyhound Park, Inc. v. Doyle,*
   719 N.W.2d 408 (Wis. 2006) ...............................................................................4

*Grossman v. Axelrod,*
   646 F.2d 768 (2d Cir. 1981) ...............................................................................1

*Heller v. Doe by Doe,*
   509 U.S. 312 (1993) ...........................................................................................15

*Horton v. Dow Jones & Co., Inc.,*
   804 F. App'x 81 (2d Cir. 2020) ...........................................................................4

*Hudson County Water Co. v. McCarter,*
   209 U.S. 349 (1908) ...........................................................................................9

*In re NYAHSA Litig.,*
   318 F. Supp. 2d 30 (N.D.N.Y. 2004) ..........................................................15-16

*Kaye v. Whalen,*
   44 N.Y.2d 754 (1978) .........................................................................................1

*Kelly Kare, Ltd. v. O'Rourke,*
   930 F.2d 170 (2d Cir. 1991) ..............................................................1, 5, 10-11, 13

*Lynch v. United States,*
   292 U.S. 571 (1934) .....................................................................................10-11

*Melendez v. City of N.Y.,*
   16 F.4th 992 (2d Cir. 2021) .............................................................................5-7

*Murr v. Wisconsin,*
   582 U.S. 383 (2017) ...........................................................................................11

*Ohio Student Loan Comm'n v. Cavazos,*
   900 F.2d 894 (6th Cir. 1990) .............................................................................11

*Penn Central Transport, Co. v. City of N.Y.,*
   438 U.S. 104 (1978) .....................................................................................13-14

*Plaza Health Labs., Inc. v. Perales,*
    878 F.2d 577 (2d Cir. 1989) ................................................................. 1

*Pro-Eco, Inc. v. Bd. of Comm'rs,*
    57 F.3d 505 (7th Cir. 1995) ................................................................. 10

*Ramanadhan v. Wing,*
    257 A.D.2d 383 (1st Dep't 1999), (Sup. Ct. 1997) ............................... 10

*Rye Psych. Hosp. Ctr. v. New York,*
    177 A.D.2d 834 (3d Dep't 1991) .......................................................... 1

*Safe Haven Home Care, Inc. v. U.S. Dep't of Health & Hum. Servs.,*
    681 F. Supp. 3d 195 (S.D.N.Y. 2023) ................................................. 10

*Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199,*
    116 F.3d 41 (2d Cir. 1997) ................................................................... 7

*Sanitation & Recycling Indus., Inc. v. City of N.Y.,*
    107 F.3d 985 (2d Cir. 1997) ............................................................ 6, 8-9

*Senape v. Constantino,*
    936 F.2d 687 (2d Cir. 1991) ............................................................ 1, 6, 9

*Sensational Smiles, LLC v. Mullen,*
    793 F.3d 281 (2d Cir. 2015) ................................................................ 15

*Sveen v. Melin,*
    584 U.S. 811 (2018) ............................................................................. 7

*Tekkno Lab'ys, Inc. v. Perales,*
    933 F.2d 1093 (2d Cir. 1991) ............................................................... 1

*Wang v. Pataki,*
    396 F. Supp. 2d 446 (S.D.N.Y. 2005) ................................................... 5

## Constitutions

Fifth Amendment ..................................................................................... 12

Contracts Clause ......................................................................... 2, 6, 8, 11-12

Takings Clause ................................................................................... 10, 12

## Federal Statutes

42 U.S.C.
  § 1396 ...................................................................................................................... 7
  § 1396a(a)(30)(A) ................................................................................................... 14

## State Statutes

CDPAP Law (Consumer Directed Personal Assistance Program) ................................ 1, 3, 5, 10, 12-13

Social Services Law
  § 363 ................................................................................................................... 7, 14
  § 363-a .................................................................................................................... 16
  § 365-f ............................................................................................................... 4-5, 12

## Other Authorities

Black's Law Dictionary, 12th ed. 2024 ........................................................................ 3

RFO 2003: New York Fiscal Intermediaries for the Consumer Directed Personal Assistance
Program Awardees by County, available at
  https://www.health.ny.gov/funding/rfo/inactive/20039/docs/awardees_by_county.pdf ............ 5

RFP # 20524, available at https://www.health.ny.gov/funding/rfp/20524/20524.pdf ...................... 8

Williston on Contracts § 32:5 (4th ed.) ........................................................................ 3

Commissioner McDonald respectfully submits this reply memorandum of law in further support of his motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

In their Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Opp."), Plaintiffs utterly fail to rebut Defendant's arguments in support of his motion to dismiss the Complaint for failure to state a claim. *See* ECF No. 26. Among other things, Plaintiffs entirely ignore that this case concerns Medicaid, a State-run and publicly funded program. Notably, CDPAP only exists as a creation of state law, and CDPAP FIs only began operating within the Medicaid sphere because prior versions of the CDPAP Law permitted them to do so. That Plaintiffs owe their entire CDPAP FI operations to state laws creating and regulating a DOH-run program is not a "relatively minor" bit of regulation such that Plaintiffs could not foresee the CDPAP Amendment. *See* Pl. Opp. at 25.

Plaintiffs nonetheless claim throughout their opposition that they could not have "reasonably expected" that the CDPAP industry could change to such a degree that they could no longer operate within it. Plaintiffs' contentions are wrong as a matter of law. It has been settled law for over 40 years that there can be no reasonable expectation or property interest in continued participation in Medicaid or continued receipt of Medicaid funds. *See* Moving Br. at 14-15, 21-23, 27. Defendant cited to a plethora of cases directly on this point in his Moving Brief, and Plaintiffs fail to distinguish, or even address, a single one of them.[2] In fact, Plaintiffs cite to 44 court decisions in their 31-page brief, and only one of those cases concerned Medicaid or the healthcare industry. *See* Pl. Opp. at 28 (discussing Preis Decl. Ex. 1, *Corning Council v. McDonald*, No. 908147-24, NYSCEF No. 59 (Sup. Ct. Albany Cnty.

---

[1] Defendant uses the same defined terms herein as those used in his moving brief. *See* ECF No. 18 ("Moving Br.").

[2] The Moving Brief discussed: *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77 (2d Cir. 2015); *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170 (2d Cir. 1991); *Tekkno Lab'ys, Inc. v. Perales*, 933 F.2d 1093 (2d Cir. 1991); *Senape v. Constantino*, 936 F.2d 687 (2d Cir. 1991); *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577 (2d Cir. 1989); *Grossman v. Axelrod*, 646 F.2d 768 (2d Cir. 1981); *Daniel v. N.Y.S. Dep't of Health*, 2022 WL 21781460, at *15 (E.D.N.Y. Aug. 27, 2022), *aff'd sub nom.*, *Daniel v. Doe 1 Through Doe 10*, 2024 WL 2131446 (2d Cir. May 13, 2024); *Kaye v. Whalen*, 44 N.Y.2d 754 (1978); *Rye Psych. Hosp. Ctr. v. New York*, 177 A.D.2d 834 (3d Dep't 1991). Plaintiffs ignored each and every case.

Sept. 30, 2024)). And the court in that one case <u>rejected</u> similar constitutional challenges brought by FIs against the same CDPAP Amendment at issue here, in denying a preliminary injunction motion.

Instead, Plaintiffs rely on case law concerning industries entirely unlike Medicaid, including a district court case involving a food delivery app that Plaintiffs cite nine times. *See generally* Pl. Opp. (citing *DoorDash, Inc. v. City of N.Y.*, 692 F. Supp. 3d 268 (S.D.N.Y. 2023)). There is simply no parallel between food delivery services and CDPAP FIs. Medicaid and the healthcare industries are both heavily regulated in New York, and CDPAP only exists as an industry as a creation of law and—unlike food delivery services—is entirely funded with taxpayer dollars.

Indeed, Plaintiffs' opposition evidences a complete lack of understanding not only of the case law concerning Medicaid, but of how Medicaid operates, and their arguments are rooted in that lack of understanding. Among other things, Plaintiffs lose sight of the fact that, first, the purpose of Medicaid is to provide medical care to the financially and medically needy, and not to benefit private businesses, and second, FIs are operating in a state-run and publicly funded program. For example, all of Plaintiffs' arguments regarding how "competitive markets" can "driv[e] down costs," would only make sense if the consumers were the payors. Under Medicaid, they are not. Thus, the only way to drive down costs is a competitive bidding process through which the State, the payor, selects the FI that demonstrates it will effectively perform FI services at the lowest cost — and that is exactly what occurred pursuant to the CDPAP Amendment.

For these and many other reasons detailed herein, Plaintiffs fail to state a plausible claim for any of their four causes of action, either facially or applied, and the Complaint should be dismissed.

## ARGUMENT

## I.    PLAINTIFFS' CONTRACTS CLAUSE CLAIM FAILS

### A.    The CDPAP Amendment Does Not Substantially Impair Plaintiffs' Contracts

Plaintiffs fail to establish that the CDPAP Amendment violates the Contracts Clause because

they cannot demonstrate that it interferes with their existing contracts. These contracts (1) state they terminate automatically and immediately if a party is legally prohibited from participating in a government program like CDPAP; and (2) account for changes in Medicaid law and regulations, including changes that curtail FIs' continued participation in CDPAP.

Initially, the contracts terminate automatically if Plaintiffs are "barred," *i.e.*, "legally prohibited" from continued participation in CDPAP as they are under the CDPAP Amendment. Moving Br. at 11 (quoting Black's Law Dictionary, 12th ed. 2024 ("Black's")). In response, Plaintiffs cite a federal law governing military contracts to suggest that the term "suspend" applies to temporary administrative discipline against individual contractors rather than blanket exclusions in statutes and regulations. Pl. Opp. at 11. Even if that law applied here, which it clearly does not, it only supports Defendant's point. Plaintiffs' contracts are automatically terminated if an FI is "excluded, suspended, or barred" from CDPAP. Each of these three terms must have its own independent meaning. *See* 11 Williston on Contracts § 32:5 (4th ed.) ("every word, phrase or term of a contract must be given effect"). While "suspended" or "excluded" may apply to penalties imposed on an individual entity, *see* Black's at 708, 1754 (defining "suspend" and "exclusion"), the term "bar" is often used more broadly to apply to the prohibition of an entire class, such as untimely claims that are barred by the statute of limitations. Black's at 181 (defining "bar" and using limitations periods as example). Plaintiffs are simply unable to counter the plain language of the contracts they signed that requires their automatic termination under the CDPAP Amendment.[3] The Contracts Claim should be dismissed on this basis alone.

Moreover, it is evident from the contracts that Plaintiffs agreed they would be subject to any

---

[3] Plaintiffs also claim that the termination provision must not apply here because the CDPAP Amendment permits some FIs to become subcontractors of the Statewide FI. Pl. Opp. at 12. But those entities are plainly not barred by the CDPAP Amendment, because they will continue to participate in the program. Accordingly, if Plaintiffs are not chosen as approved subcontractors by the April 1, 2025 statutory deadline, they will be barred from the program and their contracts will automatically and immediately terminate.

changes in law. *See Horton v. Dow Jones & Co., Inc.*, 804 F. App'x 81, 84 (2d Cir. 2020). Despite their contentions otherwise (Pl. Opp. at 12), Plaintiffs unambiguously bargained for and agreed to comply with "applicable federal and state laws and regulations relating to the provision of consumer directed personal assistance," which necessarily includes laws terminating their provision of services. Preis Decl. Ex. 2 ¶ 35; Exs. 3-5 ¶ 36. Plaintiffs also conveniently ignore other key provisions that demonstrate their unequivocal agreement to continuously comply with state and federal laws, along with Medicaid program requirements and DOH policies. *See* Preis Decl. Exs. 2-5 ¶¶ 5-6.

Read together, these provisions reveal the flaw in Plaintiffs' argument that the contracts were intended to remain in effect indefinitely, regardless of statutory or regulatory changes. *See* Pl. Opp. at 11, 13, 14.[4] Plaintiffs could have negotiated different contract provisions, including ones impervious to changes to Medicaid or with indefinite terms, but chose not to do so. Thus, Plaintiffs cannot credibly argue that Defendant is inappropriately "step[ping] in and nullify[ing] the contract[s]." Pl. Opp. at 12. Moreover, as discussed above, "a specified termination condition was triggered" since Plaintiffs will be barred from participating in CDPAP as of April 1, 2025 if they do not become subcontractors. *Contra* Pl. Opp. at 13.

Next, Plaintiffs erroneously claim their contract rights have been substantially impaired because they could not have anticipated the CDPAP Amendment when they contracted with MCOs, as they purportedly were not regulated "in the particular" to which they now object. *See* Pl. Opp. at 13. Similarly, Plaintiffs incorrectly state that they could not have expected their industry to be impacted by the CDPAP Amendment since prior amendments to SSL § 365-f "kept the competitive Fiscal

---

[4] To support their argument that the automatic renewal provisions support the continuation of the contracts into perpetuity, Plaintiffs only rely on non-binding state and district cases outside of New York. *Id.* at 14 (citing *Dairyland Greyhound Park, Inc. v. Doyle*, 719 N.W.2d 408 (Wis. 2006); *Gersman v. Grp. Health Ass'n, Inc.*, 725 F. Supp. 573 (D.D.C. 1989), *aff'd*, 931 F.2d 1565 (D.C. Cir. 1991), *vacated on other grounds*, 502 U.S. 1068 (1992)). In any event, these cases are inapposite, as they do not concern contracts that depend upon continued participation in a state-run program or contracts that were entered within an industry that was created entirely by state law. *See* SSL § 365-f. In addition, despite Plaintiffs' mischaracterization, Defendant does not suggest in the Moving Brief that the automatic renewal of existing contracts constitute new contracts. *See* Pl. Opp. at 14.

Intermediary market intact" and only made "minor changes to the process for becoming and operating as" an FI. Pl. Opp. at 13-14, 25, n. 6. That is simply not the case.

Contrary to Plaintiffs' assertions, over the last seven years several other amendments to the CDPAP Law *were* passed that would have impacted many FIs, including Plaintiffs, in a manner similar to the CDPAP Amendment. Moving Br. at 15. For example, a 2020 amendment implemented a CDPAP procurement process requiring eligible FIs to submit bids to the DOH Commissioner. *See* SSL § 365-f (4-a)(a)(i) & (b) (Version effective January 1, 2020). FIs would only be selected to contract with DOH if they were "*best suited* to serve the purposes of this section and the needs of consumers." *Id.* at (4-a)(b)(C)(iii) (emphasis added). Following the FI submission period, *only sixty-eight* out of *hundreds* of FIs were selected. *See* Moving Br. at 15 n. 8.[5] Notably, Plaintiffs Marton Care Inc. and Prompt Home Care LLC were *not* selected, meaning they could not operate within CDPAP.[6] This was plainly not a "minor change[]" to the "Fiscal Intermediary market" as Plaintiffs contend. Pl. Opp. at 13. Plaintiffs have had a reasonable expectation that State law could curtail their FI operations because prior State laws were designed to do just that. Yet Plaintiffs allowed their contracts to be renewed year after year despite this significant risk.

Given that prior State laws were enacted to significantly reduce FIs' CDPAP operations—just like the CDPAP Amendment—Plaintiffs are simply wrong to argue the amendment does not regulate them "in the particular" way its predecessors did. *Id.* For the same reasons, Plaintiffs should have anticipated that amendments to that law could result in widespread changes to the entire industry and significant changes to their businesses. *See Kelly Kare*, 930 F.2d at 175-76 (Medicaid provider has no

---

[5] *See* RFO 20039: New York State Fiscal Intermediaries for the Consumer Directed Personal Assistance Program Awardees by County, available at
https://www.health.ny.gov/funding/rfo/inactive/20039/docs/awardees_by_county.pdf. The Court may take judicial notice of public documents, including this list of awardees. *Melendez v. City of N.Y.*, 16 F.4th 992, 996 (2d Cir. 2021); *Wang v. Pataki*, 396 F. Supp. 2d 446, 453 n.1, 458 n.2 (S.D.N.Y. 2005); Moving Br. at 9.
[6] These Plaintiffs are only operating within CDPAP today due to amendments subsequently passed in 2021 and 2022. *See* SSL § 365-f (4-a)(b-2) - (b-3) (Versions effective April 19, 2021 & April 9, 2022).

"legitimate expectation of continued participation in the Medicaid"); *Senape*, 936 F.2d at 690-91 (State has "broad" discretion regarding continuation of Medicaid provider enrollment and Medicaid contracts).

Further to this point, the Second Circuit has noted that legitimate regulatory changes should be foreseeable and reasonably expected by companies operating in "heavily regulated fields." *Sanitation & Recycling Indus., Inc. v. City of N.Y.*, 107 F.3d 985, 994 (2d Cir. 1997) ("*Sanitation*"). In *Sanitation*, the Court dismissed a challenge by plaintiff garbage carters to a New York City law establishing a new regulator and significant new regulations over the sanitation industry. 107 F.3d at 994. The plaintiffs in *Sanitation*, like Plaintiffs here, argued that a novel provision of the law allowing the City to regulate the duration of private contracts, which would have the effect of immediately terminating many contracts, was an "unforeseen change." *Id.* The Second Circuit rejected this argument, holding that plaintiffs operated in a heavily regulated field and had been subject to other city regulations, and thus should have anticipated this measure. Like the City, the State has the power to enact a new law to further a legitimate public purpose in a regulated field "without worrying that in so doing private contracts may be impaired or even destroyed." *Id.*; *see infra* Section II.A. And Plaintiffs here should reasonably expect even greater government oversight than the garbage carters did, as the latter were paid by private businesses while FIs are publicly funded.

Plaintiffs do not cite *Sanitation*, instead relying on inapposite case law. Unlike the Plaintiff-FIs here or the garbage carter plaintiffs in *Sanitation*, delivery service operator plaintiffs who successfully challenged City price control legislation were deemed *not* to operate in a heavily regulated field. *See DoorDash*, 692 F. Supp. 3d at 290 (holding "the City chose to intervene in a marketplace that was previously *unregulated* in an unprecedent manner" (emphasis added)). Additionally, Plaintiffs cannot credibly compare themselves to the commercial landlords in *Melendez* who plausibly alleged a Contracts Clause claim when the City passed a law impacting commercial lease guaranties. *See Melendez*, 16 F.4th

at 992. As found in *Melendez*, unlike the heavily regulated residential real estate industry,[7] the commercial real estate market is only regulated to "varying degrees." *Id.* at 1034. In contrast, Plaintiffs here operate in healthcare: "one of the most heavily regulated industries in the country." *Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 47 (2d Cir. 1997). Moreover, the commercial lessor plaintiffs in *Melendez* were paid by the private lessees with which they contracted— again, a significant difference from Plaintiffs which are entirely State funded.

Given that Plaintiffs are funded by Medicaid, were created by State law, and have seen significant efforts by the State to curtail FI CDPAP operations, the CDPAP Amendment was certainly not unforeseeable and Plaintiffs fail to allege substantial impairment. No further analysis is needed, and the claim should be dismissed on these grounds. *Sveen v. Melin*, 584 U.S. 811, 819 (2018).

## B. The CDPAP Amendment Serves a Significant and Legitimate Public Purpose and Was Designed in an Appropriate and Reasonable Manner

Plaintiffs flatly contend that "there is no problem with CDPAP" (Pl. Opp. at 15), but it is of course the Legislature's judgment that controls here, not Plaintiffs'. And the Legislature passed the CDPAP Amendment "to reduce administrative costs, minimize service disruption, and reduce fraud and waste." *Corning Council*, Index No. 908147-24 at 10 (finding the CDPAP Amendment was passed for these purposes, rather than "punitive" purposes as claimed by Plaintiff FIs); *see also* Moving Br. at 18. Indeed, the transition to a Statewide FI, which will directly contract with DOH, allows for more comprehensive auditing by DOH. The transition will also reduce the high administrative costs associated with having so many FIs, which have made CDPAP "prohibitively expensive" — a measure consistent with Medicaid's purpose of providing medical services to the needy. *See Corning Council*, Index No. 908147-24 at 8; SSL § 363; 42 U.S.C. § 1396.

---

[7] *See Bldg. & Realty Inst. of Westchester & Putnam Cntys, Inc. v. State of N.Y.*, 2021 WL 4198332, at *34 (S.D.N.Y. Sep. 14, 2021), *aff'd*, 2024 WL 1061142 (2d Cir. Mar. 12, 2024) (plaintiffs "in a heavily-regulated industry—rental of residential property" could not "claim surprise that [their contracts] with certain tenants are affected by governmental action").

Plaintiffs attempt to dispute that the CDPAP Amendment will further those goals by arguing that the current system operates as a "thriving free market" leading to efficiency and cost savings. *See* Pl. Opp. at 5. Plaintiffs are wrong. As CDPAP currently functions, there is no "competitive" marketplace because the single State payor compensates over 600 FIs with taxpayer money, without the ability to choose or sufficiently oversee the FIs. Indeed, it is the competitive bidding process for the Statewide FI, required by the CDPAP Amendment, that will accomplish the goals of efficiency and cost savings. DOH's Request for Proposals, under which DOH selected the Statewide FI, required the agency to apply the "Best Value" concept when evaluating proposals to "optimize quality, cost, and efficiency among responsive and responsible bidders." RFP #20524 ¶ 8.1.[8] Further, the CDPAP Amendment's requirement for DOH to directly contract with a Statewide FI allows DOH considerably more oversight of the Statewide FI and its subcontractors that it has over current FIs.

Applying all the *Melendez* factors demonstrates that, in totality, the CDPAP Amendment is reasonably and appropriately designed to promote a legitimate public purpose. *See also* Moving Br. at 19-21; *Sanitation*, 107 F.3d 985 at 994 (courts should analyze laws meant to remedy economic or social problems "with a healthy degree of deference to the legislative body that enacted the measure"). In sum, Plaintiffs fail to plausibly allege a violation of the Contracts Clause.

## II.    PLAINTIFFS' TAKINGS CLAIM FAILS

### A.    Plaintiffs Fail to Allege a Protected Property Interest

Plaintiffs fail to allege a takings claim because they do not have a valid property interest in future Medicaid payments or in continued participation in Medicaid. Defendant cited to decades of case law in support of this well-established principle (Moving Br. at 21-23), and Plaintiffs failed to address a single one of Defendants' cases in their opposition. Instead, Plaintiffs essentially claim that this 40 years of precedent is "inapposite" because, instead of contracting directly with the State, they

---

[8] Available at https://www.health.ny.gov/funding/rfp/20524/20524.pdf.

contract with Medicaid MCOs which contract with the State. In particular, Plaintiffs argue they have "private contracts" with MCOs through which they provide FI services for compensation. Pl. Opp. at 21. However, Plaintiffs do not, and cannot, deny that all "compensation" under these "private contracts" are funded entirely by Medicaid, *i.e.*, they are Medicaid payments, nor that these contracts are entirely dependent upon Plaintiffs' continued participation in Medicaid. Indeed, the necessity for Plaintiffs' continued participation in Medicaid is baked into the contracts. *See supra* Section I.A.

In any event, Plaintiffs cannot create a constitutionally protected property interest in future Medicaid payments or in continued participation in Medicaid through private contracts. *See Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 224 (1986) ("If the regulatory statute is otherwise within the powers of Congress, . . . its application may not be defeated by private contractual provisions."). "Otherwise, . . . a [plaintiff] whose rights 'are subject to state restriction [could] remove them from the power of the State by making a contract about them.'" *Sanitation*, 107 F.3d at 994 (quoting *Hudson County Water Co. v. McCarter*, 209 U.S. 349 (1908)). DOH is empowered by law to administer Medicaid, and private entities like Plaintiffs cannot usurp that power through private contracts that renew indefinitely. *See id.*; *Senape*, 936 F.2d at 690-91 (Medicaid officials have "broad" discretion with respect to both continued enrollment as a Medicaid provider and the continuation of a reimbursement contract, and neither should be regarded as a property right).

Indeed, providers typically have contracts that depend on their continued participation in Medicaid, and thus any prohibition on participating in Medicaid would always "interfere" with these contracts. And yet no court has ever found that this transforms their continued participation in Medicaid into a constitutionally protected property interest. *See, e.g.*, *Concerned Home Care*, 783 F.3d at 91-92 ("Medicaid provider has no property interest in or contract right to reimbursement at any specific rate or, for that matter, to continued participation in the Medicaid program at all.'"), *affirming*, 979 F. Supp. 2d 288, 297 (N.D.N.Y. 2013) (noting that plaintiff contracted with third parties and did

not "directly receive government reimbursement"); *Kelly Kare*, 930 F.2d at 176 (plaintiff did not have a property interest in "uninterrupted participation in the [Medicaid] program, *i.e.*, a continuing reimbursement contract" with an LSSD[9]); *cf. Ramanadhan v. Wing*, 257 A.D.2d 383 (1st Dep't 1999), *reversing* 174 Misc. 2d 11 (Sup. Ct. 1997) (reversing motion court's decision that there was a protected interest under the State Constitution in continued participation in Medicaid, despite petitioner's argument that exclusion leads to, *inter alia*, the termination of contracts with healthcare facilities). Notably, as Medicaid is currently structured, most Medicaid providers receive payments via contracts with MCOs, LSSDs, or other third-parties, which in turn contract with the State. *See Safe Haven Home Care, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 681 F. Supp. 3d 195, 202-03 (S.D.N.Y. 2023) ("MCOs act as middlemen standing between the state . . . and the health care providers that care for patients."). This structure does not change that Medicaid is a state-run program and providers are receiving Medicaid funds, and thus it does not undo decades of case law that Medicaid providers do not have a constitutionally protected property interest in continued participation in Medicaid. *See supra* fn. 2.

Plaintiffs nevertheless argue, incorrectly, that the holding in *Lynch*, 292 U.S. 571, a case from 1934, necessitates a finding that *all* contracts are *always* protectible property interests. This is incorrect, as there is decades of precedent finding that multiple types of contracts are not protectible property interests. *See, e.g.*, *Connolly*, 475 U.S. at 214 ("the fact that legislation disregards or destroys existing contractual rights does not always transform the regulation into an illegal taking [but][t]his is not to say that contractual rights are never property rights").[10] More recent, controlling precedent also makes

---

[9] Plaintiffs acknowledge that all FIs contract with either LSSDs or MCOs, which perform the same functions under the CDPAP Law. Compl. ¶ 52. Plaintiffs have provided no basis to distinguish between contracts with LSSDs or MCOs for the purpose of the Takings Clause, and their own case law holds there is none. *See Lynch v. United States*, 292 U.S. 571, 579 (1934) (finding it irrelevant whether an obligor to a contract is "a private individual, a municipality, a state, or the United States"). Indeed, an FI or Medicaid provider's lack of reasonable expectation in continued participation in Medicaid is not dependent on whether they contract with an MCO versus an LSSD.

[10] Plaintiffs do not cite any controlling case law post-*Connolly* that private contracts are necessarily property interests. Although the Second Circuit has avoided the question (*Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 374-75 (2d Cir. 2006)), other courts have found that *Lynch* is no longer good law and contracts are never property. *Pro-Eco, Inc. v. Bd. of Comm'rs,*

clear that continued participation in Medicaid and continued receipt of Medicaid funds are not protected property interests, and thus neither Medicaid contracts nor contracts dependent upon continued participation in Medicaid can be protected property interests. *Concerned Home Care*, 783 F.3d at 91-92; *Kelly Kare*, 930 F.2d at 176. Further, because a provider or FI can never have a reasonable expectation in the continued participation in Medicaid, they also cannot reasonably expect that Medicaid-dependent contracts will continue indefinitely. *Cf. Murr v. Wisconsin*, 582 U.S. 383, 405 (2017) (holding that, for real property parcels, courts must define property "in a manner that reflects reasonable expectations"). Plaintiffs fail to address this simple, and controlling, point.

Moreover, although Plaintiffs emphasize the purported "private" nature of their contracts and complain that Defendant's case law focuses on public contracts, Plaintiffs fail to cite any case law indicating this distinction is material. Rather, Plaintiffs' own case law indicates that private and public contracts should be treated the same under the Contracts Clause. *See Lynch*, 292 U.S. at 579. And more recent case law indicates that, if anything, the constitution is *less* protective of private contracts, not more. *See, e.g., Buffalo Tchrs. Fed'n*, 464 F.3d at 369 (although "substantial deference" is accorded to the legislature when a law impairs a private contract, "[p]ublic contracts are examined through a more discerning lens"). As a result, there is no basis to conclude that the holdings from the cases discussed in the Moving Brief — including from cases concerning the lack of a constitutionally protected property interest in a contract that is terminable at will, or in a plaintiff's expectation of renewal — do not extend to private contracts.[11] Moreover, Plaintiffs fail to cite any controlling case law that a plaintiff

---

57 F.3d 505, 510 n.2 (7th Cir. 1995) ("We read *Connolly* . . . as effectively overruling, if it had not already been overruled, *Lynch*."); *Ohio Student Loan Comm'n v. Cavazos*, 900 F.2d 894, 900-02 (6th Cir. 1990) (distinguishing *Lynch* and holding that contract rights are not property). It is ultimately irrelevant, as binding precedent makes clear that not all contracts are property interests, and that Medicaid-dependent contracts in particular certainly are not.

[11] *See* Moving Br. at 23-24. Despite Plaintiffs' claim otherwise, the principle discussed in the Moving Brief — that "the type of interest a person has in the enforcement of an ordinary commercial contract often is qualitatively different from the interests the Supreme Court has thus far viewed as property entitled to" constitutional protection — has been extended beyond state contracts. *See id.* at 23 (stating that *Eng v. Cash*, 2012 WL 1031421, at *3-4 (E.D.N.Y. Mar. 8, 2012), *report and recommendation adopted*, 2012 WL 1030475 (E.D.N.Y. Mar. 27, 2012), applied this principle to a "private contract"). Plaintiffs

*does* have a constitutionally protected property interest in their expectation of renewal of a "private contract" or in a purported "private" contract that is terminable at will.

Finally, Plaintiffs ignore Defendant's argument that they cannot have a protectible property interest, because any potential interest they had was created by state law, which law has been amended. *See* Moving Br. at 22. Simply stated, no company could operate as CDPAP FIs in the absence of the CDPAP Law. *See* SSL § 365-f. This is entirely unlike a food delivery app, because the ability to deliver food is not created by state law, and it does not depend on a state-run program, funded entirely by public money, or the continued ability — subject entirely to a regulator's discretion — to participate in that state-run program. *See* Pl. Opp. at 20 (citing *DoorDash*, 692 F. Supp. 3d at 290).

Because Plaintiffs do not have a property interest protected by the Fifth Amendment, the Court need go no further, as Plaintiffs' Takings claim fails both facially and as applied.

### B.     Regardless, Plaintiffs Fail to Allege a Takings Claim

Even if Plaintiffs had a constitutionally protected property interest, their claim still fails.

*Categorical Taking*. First, Plaintiffs claim, incorrectly, that they state a categorical takings claim because the CDPAP Amendment entirely nullifies their contracts. In so arguing, Plaintiffs claim that it is irrelevant whether the CDPAP Amendment destroys their entire business, only whether it nullifies their contracts. But Plaintiffs fail to cite a single case, binding or otherwise, where a court applied a categorical takings claim to a nullified contract. Pl. Opp. at 22-23. And for good reason: if every government action that affected a contract constituted a categorical taking, then the Takings Clause would entirely subsume the Contracts Clause, and essentially nullify all case law thereunder, including *Melendez* and its five-factor test to determine when interferences with a contract violates the Constitution. Moreover, Plaintiffs admit that the Second Circuit so far has not held that a categorical

---

ignore the citation to *Eng* in the Moving Brief, and the parenthetical that it concerns a private contract, to falsely argue that Defendant is misleading the Court. Pl. Opp. at 21 n.4.

taking applies to any property other than real property. *See* Pl. Opp. at 22 (quoting *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252 (2d Cir. 2014), that the question is "unclear").

 *Non-Categorical Taking*. Plaintiffs are also incorrect that the CDPAP Amendment effects a taking under *Penn Central*'s three-factor test. First, Plaintiffs cannot establish "*reasonable* investment-backed expectations," *Penn Central Transport, Co. v. City of N.Y.*, 438 U.S. 104 (1978), instead focusing on how heavily invested their unilateral expectations were. *See* Pl. Opp. at 24-25. But case law is clear that it is unreasonable, as a matter of law, to expect indefinite Medicaid payments or indefinite participation in Medicaid, (*see Kelly Kare*, 930 F.2d at 175-76 (there is no "legitimate expectation of continued participation in the Medicaid program by a qualified Medicaid provider," and a "unilateral expectation" is insufficient); *Daniel*, 2022 WL 21781460, at *14-15 ("transportation provider under the Medicaid program" had no "distinct investment-backed expectations")), and Plaintiffs do not deny that any investment-backed expectations they had were entirely dependent on continued Medicaid payments and participation in Medicaid.

 In addition, although Plaintiffs also do not deny that Medicaid is a "heavily regulated business" (*see Daniels*, 2022 WL 21781460, at *15), they nevertheless claim they expected to continue operating as Medicaid FIs indefinitely because, to date, any "regulations" of FIs were "relatively minor." Pl. Opp. at 25. Once again, Plaintiffs ignore that these businesses are not operating within the private sphere and that the CDPAP industry is a creation of state law. Plaintiffs also once again ignore prior amendments to the CDPAP Law that would have put the vast majority of them out of business. *See supra* Section I.A. Because any expectations Plaintiffs may have had are not reasonable as a matter of law, there is not a "fact question" (Pl. Opp. at 26) to defeat Defendant's motion to dismiss.

 Next, Plaintiffs overstate the economic impact of the CDPAP Amendment by focusing exclusively on the alleged nullification of their contracts, rather than the overall impact of their businesses. *See supra* n.15. However, as Defendant argued in his Moving Brief, the CDPAP

Amendment would not render Plaintiffs' businesses valueless because, *inter alia*, they could transition to similar industries (Moving Br. at 26), which Plaintiffs do not dispute. *See* Pl. Opp. at 22-24.

Finally, the character of the government action weighs against Plaintiffs. Initially, the fact that the CDPAP Amendment acts as a "negative restriction rather than an affirmative exploitation by the state" weighs against finding a taking. *Buffalo Tchrs. Fed'n*, 464 F.3d at 375 (no taking where "[n]othing is affirmatively taken by the government [and] [i]nstead the government annuls something—namely, the appellants' contractual right to a wage increase"). Next, Plaintiffs mischaracterize the CDPAP Amendment, and essentially deny that it "promote[s] the common good," *Penn Central*, 438 U.S. at 124, by arguing that it will only "benefit" one group of "private parties," the Statewide FI, at the expense of another group of "private parties," the hundreds of existing FIs. This argument forgets the intended beneficiaries of Medicaid: Medicaid patients. *See* SSL § 363. FIs do not provide patient care, instead acting as middlemen between consumers and their caregivers. That the CDPAP Amendment benefits Medicaid patients over FIs, by redirecting funds from administrative costs to patient care, is consistent with pre-existing Medicaid laws. *See id.*; 42 U.S.C. § 1396a(a)(30)(A) (requiring Medicaid payments "are consistent with efficiency, economy, and quality of care.").

As a matter of law, Plaintiffs cannot meet their "substantial burden" to demonstrate that the challenged governmental action acts as a regulatory taking, (*see Ganci*, 420 F. Supp. 2d at 203), and their takings claim should therefore be dismissed.

## III.    PLAINTIFFS FAIL TO ALLEGE AN EQUAL PROTECTION VIOLATION

First, Plaintiffs admit they do not state a class of one claim, and they do not deny that they are dissimilar from an FI that has experience operating on a statewide basis. *See* Pl. Opp. at 28.

Second, Plaintiffs admit that rational basis review applies. Pl. Opp. at 27. The legislature rationally included the challenged requirement – that DOH select as the Statewide FI a company that previously provided comparable services "on a statewide basis with at least one other state" – to ensure

the Statewide FI can operate a large-scale operation in New York. The *Corning Council* court already found this requirement was rational, as it would "allow an efficient transition" to a single Statewide FI. *Corning Council*, Index No. 908147-24, at 8, 10. Plaintiffs attempt to distinguish this case by claiming the *Corning Council* court found the requirement rational using a slightly different rationale than argued in the Moving Brief. But the ultimate point is that it is rational. *Beatie v. City of N.Y.*, 123 F.3d 707, 713 (2d Cir. 1997) (under rational basis review, plaintiff must "discredit any conceivable basis which could be advanced to support the challenged" rule, "regardless of whether that basis has a foundation in the record" or "actually motivated" the rule at issue); *see also Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015). Plaintiffs' other arguments challenging this requirement are speculative and should be rejected. *See Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (under rational basis review, "[a] State . . . has no obligation to produce evidence to sustain the rationality of a statutory classification"). The Court should thus defer to the legislature's rationale for enacting the CDPAP Amendment *See id.*

## IV.    PLAINTIFFS FAIL TO STATE A SUBSTANTIVE DUE PROCESS CLAIM

Plaintiffs also admit that their substantive due process claim is subject to rational basis review. *See* Pl. Opp. at 30.[12] The CDPAP Amendment easily passes muster because its purpose is to avoid waste, fraud, and abuse in Medicaid, and "[s]uch a purpose is indeed a legitimate and laudable objective of the State, and the resulting measures cannot form the basis of a substantive due process claim." *In re NYAHSA Litig.*, 318 F. Supp. 2d 30, 41 (N.D.N.Y. 2004), *aff'd*, 444 F.3d 147 (2d Cir. 2006) (dismissing substantive due process claim regarding government action to "control Medicaid costs").

By selecting a Statewide FI through a competitive bidding process to contract with DOH

---

[12] Although Plaintiffs cite to case law concerning certain liberty interests to apparently argue they have certain property interests, they do not claim that the CDPAP Amendment interferes with a "fundamental right" or that the amendment is subject to strict scrutiny. *See* Pl. Opp. at 29-30; *cf. Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 575 (1972) (although there is a "liberty interest" in the *ability* to contract, "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when" his employment contract is not renewed, but he "remains as free as before to seek another" job or employment contract). In addition, Plaintiffs do not claim that the application of the CDPAP Amendment "shocks the conscience," and therefore they cannot establish an "as applied" challenge. *See Goe v. Zucker*, 43 F.4th 19, 30 (2d Cir. 2022).

directly, DOH can better control costs and provide better oversight. Plaintiffs once again ignore that Medicaid is a state funded and state-run program by citing to various treatises regarding the effect of monopolies on the private commerce. There is no concern here about a monopoly "raising prices" causing a "transfer of wealth from consumers," because the consumers are not the payors. By requiring DOH to select and contract with the Statewide FI demonstrating the "best value," the CDPAP Amendment permits DOH to *prevent* runaway administrative costs of middlemen FIs. This is a rational move, "given that middlemen are not known for generating efficiencies." Pl. Opp. at 31.

In any event, the Court need not delve into Plaintiffs' arguments about free market capitalism or give weight to their claims regarding the logic of the CDPAP Amendment because, under rational basis review, "[i]t is not the role of the courts to second-guess the wisdom or logic of the State's decision to credit one form of disputed evidence over another."[13] *Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022) (affirming dismissal of substantive due process claim); *see also In re NYAHSA Litig.*, 318 F. Supp. 2d at 41 (declining to look further than the stated purpose of "control[ling] Medicaid costs" when dismissing substantive due process claim). Ultimately, it is Plaintiffs' burden to "discredit any conceivable basis which could be advanced to support the challenged" rule under rational basis review. *Beatie*, 123 F.3d at 713. Plaintiffs simply have not met this burden.

---

[13] Their other arguments can also be rejected. First, Plaintiffs argue the CDPAP Amendment "will make it more difficult to track and combat any fraud or abuse" because it "removes" Comptroller review. Pl. Opp. at 31. On the contrary, although the Comptroller has certain oversight of some, but not all, public contracts *at the procurement stage*, it is the role of DOH to provide continuing oversight of Medicaid to prevent fraud, waste, and abuse. *See* SSL § 363-a (DOH "shall act as the single state agency to supervise the administration of" Medicaid (emphasis added)). Second, Plaintiffs claim that DOH will have less ability to oversee subcontractors of the Statewide FI than the currently operating FIs. This is incorrect. DOH can still provide direct oversight of the subcontractors as needed, and it will certainly be easier to oversee a single Statewide FI and its limited number of subcontractors than the *hundreds* of current FIs with which DOH has no direct contractual relationship.

**CONCLUSION**

For the reasons set forth above, Defendant respectfully requests that the Court grant his motion to dismiss the Complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        December 31, 2024

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant*

By: /s/ *Jessica Preis*
Erin R. McAlister
Jessica Preis
Assistant Attorneys General
28 Liberty Street, New York, NY 10005
(212) 416-8817 | jessica.preis@ag.ny.gov
(212) 416-6236 | erin.mcalister@ag.ny.gov

17